*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0120P (6th Cir.)
File Name: 04a0120p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

In re: GREGORY LOTT,
            *Movant.*

No. 04-3462

———————————

Filed: April 22, 2004

Before: BOGGS, Chief Judge; MERRITT and COLE,
Circuit Judges.

———————————

**ORDER AUTHORIZING THE DISTRICT COURT
TO CONSIDER SECOND APPLICATION FOR A
BRADY, ACTUAL INNOCENCE, GATEWAY
CLAIM**

———————————

The petitioner, Lott, scheduled to be executed April 27, 2004, in Ohio, has applied for an Order under 28 U.S.C. § 2244(b) (pertaining to "second or successive habeas corpus" petitions), directing the district court to consider his actual innocence claim based on evidence withheld in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). He has made the requisite "prima facie showing" under 28 U.S.C. § 2244(b)(3)(C). The application is granted and the execution

stayed pending adjudication of the claim in the district court. The district court is authorized to consider the application.

The *Brady* claim (not tied to the actual innocence aspect of the claim) was presented in Lott's first federal habeas petition, but we ruled that the claim was procedurally barred and did not reach the constitutional merits of the claim. *Lott v. Coyle*, 261 F.3d 594, 619 (6th Cir. 2001) ("Lott never raised in state court the specific objection he raises today, and thus we are foreclosed from reviewing it"). We interpreted Ohio state law to create an adequate and independent state ground precluding the federal court from reaching the claim. *Id.* at 617-19. As to the "actual innocence" or "miscarriage of justice" aspect of the claim, we concluded that "since the issue may now be pending in state court and has not been fully briefed before us, we reach no final conclusion...." *Id.* at 619. Thus, no federal court has decided the constitutional merits of the petitioner's *Brady* claim or his actual innocence claim.

After our opinion, the Ohio courts did in fact reach the *Brady* claim on the merits based on a second petition for post-conviction relief filed in state court. *State v. Lott*, Nos. 79790, 79791, 79792, 2002 WL 1255579 (Ohio Ct. App. May 30, 2002). The state court fully adjudicated the constitutional merits of the *Brady* claim, discussing at length the facts on the merits and deciding the merits against the petitioner.

Thus, this current application for a second federal petition is, if granted, the first time in a federal court that the "factual predicate" for the constitutional claim would be recognized and adjudicated. Although the "factual predicate" for the claim was discovered prior to the adoption of AEDPA, when new stringent requirements were first imposed in death cases, this is the first time since the adoption of AEDPA that a federal court could consider the merits of the constitutional claim. It is not the fault of Lott or his counsel that this is the first time since AEDPA's adoption that a federal court could consider the claim on the merits. This means, we believe, that

the second petition should be authorized if the petitioner in his application makes simply a "prima facie showing" that the facts underlying the claim "if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(ii).

A "prima facie showing," as Judge Posner pointed out for the Seventh Circuit, is not a difficult standard to meet:

> By "prima facie showing" we understand (without guidance in the statutory language or history or case law) simply a sufficient showing of possible merit to warrant a fuller exploration by the district court. All that we usually have before us in ruling on such an application, which we must do under a tight deadline (see 28 U.S.C. § 2244(b)(3)(D)), is the application itself and documents required to be attached to it, consisting of the previous motions and opinions in the case.

*Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997). "Prima facie" in this context means simply sufficient allegations of fact together with some documentation that would "warrant a fuller exploration in the district court." Those allegations of fact, together with documentation, are clearly presented in the application before us. Judge Posner's "tight deadline" point is further reinforced by subsection (b)(3)(E), which states that "the grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." Congress has emphasized the need for quick action by the court without further review.

We conclude that this lenient prima facie standard is met and that the matter should be adjudicated. Lott has made a prima facie showing through documents that the prosecutor

of Lott's case fraudulently failed to disclose at trial that the murder victim, before dying, identified a person with a different skin color from Lott as his assailant. The petitioner Lott has also made a prima facie showing that the victim identified his assailant as someone whom he had seen at his local barber shop and that the prosecutor at trial fraudulently refused to reveal this fact as well. In addition, the petitioner Lott has made a prima facie showing that the prosecutor at trial falsely stated to the court that the instrumentality that caused the victim's death — namely, kerosene lamp fluid — was not present in the victim's house and had to be brought into the house for the purpose of killing the victim by the petitioner Lott. The petitioner Lott has made a prima facie showing that the victim had a kerosene gas lamp in his home which he used, a lamp that would have used the type of kerosene lamp fluid which caused the victim's death. Lott has made a prima facie showing that the prosecutor made statements to the court at trial directly contrary to these facts which he knew to be true in order to use the lamp fluid to prove premeditation, an element required in order for the prosecutor to secure the death penalty. Through the citation and quotation of many Ohio opinions, Lott has also made a prima facie showing that the prosecutor has been guilty of similar misconduct in more than ten other cases.[1]

---

[1] Part of the prima facie case offered on this point is found on page 1 of Lott's application, as follows:

> Mr. Lott's trial prosecutor, Carmen Marino, has a shameful track record of breaking rules to win convictions. *See State v. Liberatore*, 69 Ohio St. 2d 583, 589-90 (1982) ("the prosecutorial blunders in this case are too extensive to be excused."); *State v. Owensby*, 1985 Ohio App. LEXIS 7351, *3 (1985) ("prosecutor's comments clearly outside the bounds of mere 'earnestness and vigor[.]'"); *State v. Heinish*, 1988 Ohio App. LEXIS 3644, *20 (1988) ("Clearly the prosecutor improperly commented on excluded evidence."); *State v. Harris*, 1990 Ohio App. LEXIS 5451 (1990) (prosecutorial misconduct found, but harmless); *State v. Hedrick*, 1990 Ohio App. LEXIS 5647 (1990) (prosecutorial misconduct by making improper

Taking the evidence as a whole, we conclude that petitioner's application makes a prima facie showing of constitutional *Brady* error that, if proved in the district court, may be sufficient to cause the fact finder to reach the conclusion beyond a reasonable doubt that the petitioner was not guilty of premeditatedly murdering the victim.

Obviously, the egregious prosecutorial misconduct alleged here, if proved, must be deterred. So long as we value the rule of law, such conduct, if it occurred, cannot be tolerated in any kind of case — much less in death penalty cases.

Accordingly, the application for an Order authorizing the district court to proceed with his application is hereby granted and the execution of Lott is hereby stayed pending adjudication in the district court.

---

comments on matters outside of record and on defendant's failure to testify.); *State v. Durr*, 58 Ohio St. 3d 86 (1991) (improper comments on the appellant's unsworn statement, the appellant's prior convictions, and mitigating factors held harmless.); *State v. Keenan*, 66 Ohio St. 3d 402 (1993) (presenting an "aggravated example" of prosecutorial misconduct); *State v. D'Ambrosio*, 67 Ohio St. 3d 185 (1993) (prosecutorial misconduct found, but either waived or harmless); *State v. Johnson*, 1992 Ohio App. LEXIS 4256, *17 (1993) (prosecutorial misconduct "[rose] to the level of being constitutional errors."); *State v. Matthews*, 1999 Ohio App. LEXIS 896, *5 (1999) (prosecutor denied making a deal with witnesses, however, "[t]here is ample evidence to suggest that [the witness] at least did in fact receive just what the assistant county prosecutor said he would not give him."); *State v. Larkins* (Nov. 6 2003), Cuyahoga App. No. 82325, unreported (affirming grant of new trial upon finding that Marino withheld eyewitness descriptions not matching Larkin; hid a deal he struck to obtain the testimony of the only claimed eyewitness; then stood silent as she lied about the deal and her criminal record during trial).

---

## DISSENT

---

BOGGS, Chief Judge, dissenting. After a thorough review of the record, I can discern no legal basis upon which we could, much less should, grant Lott's request for consideration of a second habeas petition. Therefore, I respectfully dissent.

Lott appealed to this court the denial of his first petition for habeas relief, and this panel affirmed. *Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001). Any disposition of a habeas petition on the merits, including dismissing on the grounds of procedural default, means that a defendant has exhausted his unrestricted right to petition for habeas relief. *In re Cook*, 215 F.3d 606, 608 (6th Cir. 2000); *Harvey v. Horan*, 278 F.3d 370, 379 -80 (4th Cir. 2002) (citing cases from the Second, Fifth, and Tenth Circuits). The requirements for a successive habeas petition are strict and Lott cannot meet them.

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs any subsequent petition for habeas relief; the relevant part of the statute states:

> (b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244 (b)(1)-(2).

Lott briefed his *Brady* and actual innocence claims in his first appeal of the habeas denial to this court. Appellant Br., *Lott v. Coyle*, No. 99-4155, at 32 (*Brady*), 44 (actual innocence). Therefore, under 28 U.S.C. § 2244(b)(1), he cannot present them again. I question the assertion in the order that this current petition is "the first time in a federal court that the 'factual predicate' for the constitutional claim would be recognized and adjudicated." (Maj. Op. at 2). It is worth clarifying that the "factual predicate" for actual innocence is exactly the same as the *Brady* claim: primarily the victim's description of his assailant. This issue was briefed in the original case; this panel considered the variance in description in its original opinion. *Lott*, 261 F.3d at 618. The extent to which we "could" consider Lott's constitutional claims has not changed between his two petitions. We could consider his *Brady* claim in our earlier adjudication, did so, and found it procedurally defaulted.

We also could consider his actual innocence claim in 2001, did so, and expounded upon it at length in *dicta.* We ultimately decided that we could not reach an adequate conclusion because of insufficient evidence in the record about a confession that Lott had made, which was suppressed because of a *Miranda* violation. *Id.* at 620-21. We simply declined to decide whether Lott's confession would preclude an actual innocence claim; we did not conclude that the claim itself was beyond our purview. *Id.* at 621 ("Since this issue may now be pending in state court and has not been fully briefed before us, we reach no final conclusion **regarding the**

**effect of the confession**.") (emphasis added). Nothing in the case law or statute suggests that our opinion was insufficient to constitute adjudication of Lott's first habeas petition and therefore relieve him of the burdens that AEDPA imposes.

If we truly did "not reach the constitutional merits" of Lott's actual innocence claim, the court's theory creates a clear mechanism for an end-run around the high bar of § 2244. This order, resting as it does on our procedural, rather than factual basis for a part of our ruling in Lott's first appeal, means that a panel can give a capital defendant exactly what AEDPA prohibits – two bites at the apple without actually having to meet AEDPA's standards for a successive petition, simply by failing to rule on the factual merits of some claim.

For instance, the majority never really says that Lott met the due diligence standard of § 2244(b)(2)(B)(i), it just slides around it by saying that this petition would be "the first time in a federal court that the 'factual predicate' for the constitutional claim would be recognized and adjudicated," though the majority immediately thereafter concedes that the evidence was discovered long ago. (Maj. Op. at 2).

Lott has made no showing of a new rule of constitutional law, and therefore 28 U.S.C. § 2244(b)(2)(A) is not an avenue of relief that is open to him.

Although Lott argues that his actual innocence claim is predicated on evidence that the prosecution withheld and was not available to the three-judge panel that convicted and sentenced him, the evidence came to light in 1991. Lott has had procedural difficulties getting the evidence before the courts, because his initial appellate lawyer chose not to introduce it. However, the standard here is evidence that "could not" have been discovered with due diligence. Not only could the evidence here have been discovered, it was. Clause (b)(2)(B)(i) is not satisfied.

In sum, we are presented with a petition for successive habeas that does not meet the criteria of the statute governing

consideration of such claims. We have no legal basis on which to grant it.

Even if I could be persuaded to ignore the statute, I can see no interpretation of the evidence in question that would "be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(ii). This is the test we must apply, rather than the much lower standard that the majority uses: "sufficient to cause the fact finder to reach the conclusion beyond a reasonable doubt that the petitioner was not guilty of premeditatedly murdering the victim." (Maj. Op. at 5). *Compare House v. Bell,* 311 F.3d 767, 778, n.4 (6th Cir. 2002) (en banc) (Merritt, J.) ("Scholastic arguments aside, surely no one would really hold the view that House should be executed if 99 of 100, or even 50 of 100, jurors would now seriously doubt the persuasiveness of the state's case. In the real world of nonhypothetical juridical minds, only a new trial with real jurors will resolve such a problem.") *with* House, 311 F.3d at 783 (Boggs, J., dissenting) ("the *Schlup* standard 'does not merely require a showing that a reasonable doubt exists in light of the new evidence, but rather that no reasonable juror would have found the defendant guilty.'" *Schlup,* 513 U.S. at 329, 115 S.Ct. 851. . . . [T]he court's opinion expresses the court's belief that House's sentence must be overturned if 'even 50 of 100 ... jurors would now seriously doubt the persuasiveness of the state's case.' . . . However, it is as clear as the English language can make it that this is not the standard stated by Justice Stevens in the quotation above.").

Prosecutorial misconduct is a separate issue and cannot be used to bolster a weak claim of actual innocence. Such misconduct can constitute the prerequisite constitutional violation for a claim for relief under *Schlup v. Delo*, but the petitioner cannot rely on that malfeasance to build an inference of actual innocence. *Schlup v. Delo,* 513 U.S. 298, 324 (1995) (explaining that a petitioner asserting actual innocence must "support his allegations of constitutional error

with new reliable evidence"). No matter how strenuous the rhetoric of condemnation of the prosecutor here, it is no substitute for compliance with AEDPA.

I will address briefly the evidentiary claims that Lott claims entitles him to bring a second habeas petition.

*Discrepancies in Description*

The victim was able to describe his assailant as an African-American man with long hair, a medium build, light skin, who wore a light-colored shirt, grayish tennis shoes, and a cap without a bill. When Lott was arrested, he had short hair and medium to dark skin tone. Since two weeks had passed between the assault and Lott's arrest, he had ample opportunity to cut his hair; in fact, his hair is so short in the photo taken when he was booked that one could easily conclude that he had very recently visited his barber. The police found tennis shoes matching the victim's description in Lott's car. A sole print at the crime scene is at least consistent with that shoe, although not a confirmed match. The victim said his assailant was 5' 10"; Lott is 6 feet. I find that a remarkably good guess, given McGrath's vantage point: tied up on the floor.

That leaves only the difference of opinion between the shade of Lott's skin. The petitioner emphasizes that no make-up was ever found to support the speculation that Lott lightened his skin as part of a disguise. I agree that seems unlikely. However, the victim was an 80-year-old man who was on the floor, under attack, even on fire, when he observed his assailant. Therefore his perception of light skin may have been inaccurate. In any case, this remains the only discrepancy that cannot be readily explained; by no stretch of the imagination could one assert that no reasonable factfinder would have convicted, even had that contradiction been in the record.

Lott argues in his brief that McGrath was not able to identify Lott from the composite sketch. Police reports indicate that McGrath was not coherent at the time he was shown the sketch, fell asleep in the middle of the interview,

and in fact died a few hours later. It can hardly be said that the discrepancy is so compelling that no reasonable factfinder would convict based on all the other trial evidence, not to mention the suppressed confession which must be weighed in assessing an actual innocence claim.

*Kerosene Oil*

Lott emphasizes in his petition that the prosecutor lied at his trial when he told the judges that McGrath did not own an oil lamp and that Lott must have brought the oil used to burn McGrath with him, showing his intent to murder the victim. The origin of the oil is immaterial to Lott's claim of actual innocence. Assuming that McGrath owned the oil, it was available to Lott, who used it in his attack on the victim. Were this an argument about prosecutorial misconduct in the penalty phase of a capital trial, I would see the relevance. In this context, I cannot draw any inference from the oil that indicates Lott's innocence.

Lott has fallen far short of the requirement of producing "clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(ii). The initially-suppressed evidence, which boils down to a contradiction over skin tone, and false statement about the origin of the oil used to burn the victim, also cannot reach the standard enunciated in *Schlup v. Delo*: *"*the habeas petitioner [must] show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' . . . To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo* 513 U.S. 298, 327 (1995) (citation omitted). *See Herrera v. Collins* 506 U.S. 390, 417 (1993) ("[T]he threshold showing for such an assumed right [not to be executed if actually innocent] would necessarily be extraordinarily high."). Lott has not made a prima facie case of actual innocence nor shown that a constitutional violation is the cause of his conviction. Therefore, this panel has no

grounds on which to consider his case further. I respectfully dissent from the grant of permission to file a new habeas petition, and the attendant stay of execution. I also dissent from our apparently limitless stay of execution despite the matter's being remitted to activity in the district court.

ENTERED BY ORDER OF THE COURT

/s/  Leonard Green

_____
Clerk