NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0023n.06

No. 16-2760

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KARL VINSON, | ) | **FILED** |
| | ) | Jan 11, 2018 |
| Petitioner-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| SHANE JACKSON, Warden, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |

AMENDED OPINION

BEFORE:     SUHRHEINRICH, SUTTON, and BUSH, Circuit Judges.

SUHRHEINRICH, Circuit Judge.  In 1986, Karl Vinson was convicted in Michigan state court of first-degree criminal sexual conduct and breaking and entering a building with the intent to commit a felony.  He exhausted his state court remedies and unsuccessfully sought a writ of habeas corpus.  After a new round of serological testing and a post-conviction evidentiary hearing, he contends that new evidence entitles him to file a second petition for a writ of habeas corpus.  Because Vinson has failed to establish the Antiterrorism and Effective Death Penalty Act ("AEDPA") threshold requirements to pursue a second habeas petition, we affirm the district court's denial of his request.

## I.     BACKGROUND

Karl Vinson was accused of raping a nine-year-old girl in 1986.  The state alleged that he snuck into the girl's room through a window while she was sleeping and proceeded to rape her.

After unsuccessfully attempting to wake the victim's sister up (who shared a bedroom with the victim), he told the girl to close her eyes and count to fifty. While she counted, he exited through the window.

At trial, the prosecution relied on two pieces of evidence to secure Vinson's conviction. First, the victim identified Vinson as her rapist. She explained that there was enough light in the room for her to see his facial features. She also explained that she recognized his voice because she had met him previously, since Vinson's ex-wife babysat the victim. Second, the state relied on forensic evidence from the crime scene. Specifically, there was a stain containing a mixture of blood and seminal fluid left on the victim's bedsheet. While DNA testing was not yet available, the state conducted serological tests on the bedsheet. Serological testing analyzes bodily fluids and can determine, among other things, the presence of seminal fluid and, in some instances, blood types.

In this case, the state's serological tests on the bedsheet revealed two things: (1) the presence of seminal fluid and at least one sperm cell; and (2) blood type-O antigens.[1] The state conducted tests on both the victim and Vinson, as well. The victim was a type-O secretor and Vinson was determined to be a type-AB non-secretor. The difference between a secretor and a non-secretor is important for purposes of Vinson's claim. A secretor's "bodily fluids (saliva, semen, vaginal secretions) contain a water-soluble form of the antigens of the ABO blood group." *People v. Vinson*, No. 303593, 2012 WL 3046236, at *2 (Mich. Ct. App. July 26, 2012) (quoting mediLexicon, http://medilexicon.com/medicaldictionary.php?t=80515). A non-secretor's bodily fluids, on the other hand, will contain no such antigens. Thus, a secretor's

---

[1] The presence of type-O antigens indicates that the donor of the bodily fluids had type-O blood. Similarly, were there type-AB antigens in the stain, it would indicate that the donor had type-AB blood.

blood type can be determined by testing that person's bodily fluids, whereas a non-secretor's blood type cannot.

At trial, Paula Lytle, an expert witness for the prosecution, testified that she had tested Vinson and determined him to be a non-secretor, meaning that his blood type *would not* have shown up in the stain on the bedsheet. This was an important piece of testimony, as the bedsheet stain analysis revealed only type-O antigens. Were Vinson a secretor, there likely would have been type-AB antigens on the bedsheet, as well. However, the absence of type-AB antigens from the bedsheet could be explained away by Vinson's non-secretor status.

The jury convicted Vinson, and he began his appeal process. During this process, Vinson sought DNA testing (which, at that point, was available) of the bedsheet; however, he learned that the physical evidence had since been destroyed. After exhausting his state court remedies and unsuccessfully seeking a writ of habeas corpus in federal district court,[2] Vinson approached a concerned citizen who offered to pay for a new round of serological testing. That testing demonstrated that Vinson was actually a type-AB *secretor*. The Michigan State Police conducted a follow-up test and confirmed that Vinson was, in fact, a secretor. That fact is not in dispute here. Vinson was subsequently granted a post-conviction evidentiary hearing.

Lytle was called to testify once again at the evidentiary hearing. She testified that, had she been asked where the type-O antigens in the stain had originated, she would have responded that they could not have come from Vinson, but that they could have come from the "donor of the semen and/or the victim." She further testified that, if she had known that Vinson was a secretor at his trial, she would have determined that the physical evidence excluded him. Defense counsel called a second expert witness, Arthur Young, who corroborated Lytle's

---

[2] Aside from the fact that the claims in his second petition are different from those in his earlier petition, the contents of Vinson's first habeas petition are not important for purposes of this proceeding. *See* 28 U.S.C. § 2244(b)(1) (requiring dismissal of successive habeas petitions making the same claims).

testimony. In response, the prosecution presented expert witness Connie Swander, who testified that a stain might contain type-AB antigens but fail to register a result if there is an insufficient number of antigens present on the sampled portion. In other words, according to her testimony, Lytle's tests on the bedsheet stain did not prove the absence of type-AB antigens.

After this evidentiary hearing, the trial judge denied Vinson's request for relief and his claim of ineffective assistance of counsel. Vinson unsuccessfully challenged that determination in the Michigan Court of Appeals. *People v. Vinson*, No. 303593, 2012 WL 3046236, at *7 (Mich. Ct. App. July 26, 2012). The Michigan Supreme Court denied leave to appeal that decision. *People v. Vinson*, 843 N.W.2d 493 (Mich. 2014). Vinson then wished to file a second petition for a writ of habeas corpus. As required by 28 U.S.C. § 2244(b)(3)(A), he sought permission from this court to file that petition. *In re Vinson*, No. 14-2521 (6th Cir. Sept 24, 2015). We authorized that filing and restricted Vinson to three claims: (1) ineffective assistance of trial counsel for failing to adequately cross-examine Lytle; (2) ineffective assistance of appellate counsel for failing to raise the first claim on appeal; and (3) actual innocence. *Id.* The district court rejected all three of the claims. *Vinson v. Mackie*, No. 14-CV-14542, 2016 WL 7100249, at *10 (E.D. Mich. Dec. 6, 2016). Vinson sought a certificate of appealability as to the district court's judgment. *See* 28 U.S.C. § 2254(c)(2). We granted that certificate as to Vinson's first two claims—those alleging ineffective assistance of counsel—and denied it as to his third claim of actual innocence. *Vinson v. Jackson*, No. 16-2760 (6th Cir. June 15, 2017) (order granting certificate of appealability in part).

## II.   ANALYSIS

This is Vinson's second petition for a writ of habeas corpus.  As such, he must show that he satisfies the threshold AEDPA requirements to pursue his petition.  In relevant part, AEDPA provides:

> A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless--
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2).  In granting leave to file this second petition, we held that Vinson had made a prima facie showing that he satisfied these requirements.  *See In re Vinson*, No. 14-2521 (6th Cir. Sept. 24, 2015); *see also* 28 U.S.C. § 2244(b)(3)(C).  The prima facie determination, however, is not a full-throated review—it only requires us to determine that the allegations "warrant a fuller exploration in the district court."  *In re McDonald*, 514 F.3d 539, 544 (6th Cir. 2008) (quoting *In re Lott*, 366 F.3d 431, 433 (6th Cir. 2004)).  A district court must apply a stricter standard.  *See, e.g.*, *Tyler v. Cain*, 533 U.S. 656, 661 n.3 (2001) ("[T]o survive dismissal in district court, the applicant must actually 'sho[w]' that the claim satisfies the standard.").  Accordingly, the district court was correct to recognize that it needed to make the threshold

AEDPA findings. *Vinson*, 2016 WL 7100249, at *4. But the district court never clearly made any findings as to those requirements.[3]

Only the requirements of section 2244(b)(2)(B) are implicated here. We need not proceed past the first of those requirements, new evidence not previously discoverable through due diligence, because Vinson has failed to present any.

In his second habeas petition and brief in support thereof, Vinson relied primarily on his newly discovered secretor status. But Vinson's status as a secretor or a non-secretor was a discoverable fact at the time of his original habeas petition—the key reference point for our analysis. Indeed, this evidence was available at his original criminal trial, well before his first request for habeas relief. That his secretor status was tested is proof of that. Thus, this information does not meet the requirements of § 2244(b)(2)(B)(i) and cannot support a second habeas petition. 22 U.S.C. § 2244(b)(2)(B)(i).

Perhaps recognizing this deficiency, Vinson presents a slightly different argument on appeal. He argues that the factual predicate supporting his claim is his secretor status "coupled with Ms. Lytle's testimony at the evidentiary hearing." He argues that Lytle's testimony indicates that she would have exonerated Vinson at trial even if he actually was a non-secretor. Specifically, Vinson argues that Lytle, had she been asked the right questions, would have testified that "there is only a remote possibility that the Type-O antigens on the [bedsheet] came from the victim, and, therefore, the Type-O antigens almost certainly came from the true perpetrator's semen." But this factual predicate fails for the same reason. Nothing in Lytle's

---

[3] The district court's opinion is unclear as to how it rejected these three claims. The opinion began by indicating that it would dismiss the claims due to Vinson's failure to satisfy the threshold AEDPA requirements. *Vinson*, 2016 WL 7100249, at *4. However, it then proceeded to consider the merits of Vinson's ineffective assistance of counsel claims—an inquiry presumably reserved for consideration of his habeas petition—and ultimately ordered that his petition be denied, rather than dismissed. *Id.* at *10. This confusion, however, does not affect our judgment here. Accordingly, we need not resolve how the district court did away with these claims.

statements can be considered evidence that could not have been previously discovered. The technology existed to determine blood type and secretor status. And Lytle's conclusions drawn from those tests were clearly discoverable, as she offered them at trial.

Regardless of how Vinson articulates the factual predicate undergirding his second habeas petition, it is clear that the facts giving rise to this claim were discoverable at trial, and thus, could have been known when he filed his first habeas petition. Because we must dismiss all successive habeas petitions unless the factual predicate supporting the petition "could not have been discovered previously through the exercise of due diligence," Vinson's petition cannot proceed. *See* 28 U.S.C. § 2244(b)(2)(B)(i).

Even had Vinson presented evidence sufficient to satisfy § 2244(b)(2)(B)(i), his second petition must still be dismissed. The second threshold AEDPA requirement mandates that Vinson's new evidence must show, by clear and convincing evidence, that no reasonable juror would have found him guilty. *Id.* § 2244(b)(2)(B)(ii). At trial, the victim presented eyewitness testimony identifying Vinson as her assailant. Given that fact, it is difficult to see how Vinson's secretor status, alone, would meet this requirement.

## III.   CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.