RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0207p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

IN RE: KAREEM JACKSON,

*Movant.*

No. 21-3102

———————————

On Motion for Leave to File a Second or Successive
Habeas Corpus Petition and On Motion to Remand.

United States District Court for the Southern District of Ohio at Columbus;
No. 2:20-cv-03934—Algenon L. Marbley, Chief District Judge.

Decided and Filed: September 2, 2021

Before: BOGGS, MOORE, and CLAY, Circuit Judges.

———————————

## COUNSEL

**ON MOTION FOR LEAVE TO FILE A SECOND OR SUCCESSIVE HABEAS CORPUS PETITION AND ON MOTION TO REMAND:** Alan C. Rossman, Bevlynn J. Sledge, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Movant. **ON RESPONSE:** Stephen E. Maher, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Respondent.

The panel delivered the order of the court. MOORE, J. (pp. 8–14), delivered a separate concurring opinion. BOGGS, J. (pp. 15–16), delivered a separate dissenting opinion.

———————————

## ORDER

———————————

Kareem Jackson, an Ohio death-row prisoner represented by counsel, has filed two motions. He requests leave to file a second or successive 28 U.S.C. § 2254 habeas corpus petition. *See* 28 U.S.C. § 2244(b)(3)(A). He also moves the Court to remand his pending petition to the district court, arguing that his petition is not "second or successive" such that his

claims must meet the requirements of § 2244(b). For the following reasons, Jackson's motion to remand is **DENIED**; his application for permission to file a second or successive habeas corpus petition is **GRANTED**.

Jackson was convicted of six counts of aggravated murder (with capital specifications), three counts of aggravated robbery, four counts of kidnapping, and one count of felonious assault, and sentenced to death. He exhausted direct-appeal and state post-conviction remedies and then filed a federal habeas corpus petition, which was denied. *See Jackson v. Bradshaw*, 681 F.3d 753 (6th Cir. 2012). We denied a prior motion for remand and application for permission to file a second or successive petition in a previous order. *In re Kareem Jackson*, No. 15-4055 (6th Cir. Jan. 13, 2016) (order).

Jackson returned to the district court in August 2020 and filed the federal habeas corpus petition now before us, asserting that: the prosecution withheld material and exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); the prosecution presented false and coerced testimony in violation of *Napue v. Illinois*, 360 U.S. 264 (1959); and Ohio's post-conviction scheme violates the Supremacy Clause. The warden filed a motion to transfer the action to this Court, arguing that, under § 2244(b), Jackson needed permission from a court of appeals before filing a successive petition. Relying on *Panetti v. Quarterman*, 551 U.S. 930 (2007), and *Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998), Jackson responded that his claims were not previously ripe for review and therefore not subject to § 2244(b)'s requirements. The warden replied that *In re Wogenstahl*, 902 F.3d 621 (6th Cir. 2018) (per curiam), controlled and required that the action be transferred to this Court. The district court granted the warden's transfer motion.

Before this Court, Jackson only includes his *Brady* and *Napue* claims in his corrected application for leave to file a successive habeas petition. Specifically, Jackson claims that the government suppressed a statement from a key eyewitness, Rebecca Lewis, that her initial description of the suspect did not match Jackson, but rather matched that of an alternative suspect. He also claims under *Brady* that another witness statement supporting the inference that the alternative suspect committed the murders was suppressed. Under *Brady*, as well as *Napue*,

Jackson contends that his counsel recently received a declaration from the witness Ivana King that she had been coerced by police into testifying that Jackson confessed to the murders.

Jackson also filed a motion to remand the case to the district court. The warden filed a response opposing the application and the motion. Jackson has filed a reply.

## I. Motion to Remand

Jackson argues that § 2244, which governs the finality of federal habeas proceedings, does not apply in this case. He contends our decision in *Wogenstahl* contravenes prior precedent and therefore is not controlling. *See Darrah v. City of Oak Park*, 255 F.3d 301, 310 (6th Cir. 2001) ("[W]hen a later decision of this court conflicts with one of our prior published decisions, we are still bound by the holding of the earlier case."). *Wogenstahl* does not contradict our prior decisions in *In re Jones*, 652 F.3d 603, 605 (6th Cir. 2010), and *Hill v. Mitchell*, 842 F.3d 910, 925 (6th Cir. 2017), as Jackson claims. In *Jones*, we found that the petitioner's claim challenging changes to Michigan's parole system that took effect after the petitioner's original petition had been filed was not second or successive so as to require § 2244(b) authorization. *Jones*, 652 F.3d at 605–06. *Hill* found that a particular *Brady* claim did not relate back to a general *Brady* claim for habeas relief in the original petition that had been "completely bereft of specific fact allegations or evidentiary support and was not tied to any particular theory of relief." *Hill*, 842 F.3d at 924. Since these decisions do not implicate the holding in *Wogenstahl*, we are bound to follow the later opinion. *See Freed v. Thomas*, 976 F.3d 729, 738 (6th Cir. 2020) (recognizing that a holding of a published panel opinion binds later panels unless the decision is overruled en banc or by the Supreme Court).

In *Wogenstahl*, we held that a habeas claim was ripe if the facts underlying the claim "had already occurred when he filed his petition, although Wogenstahl was unaware of these facts." *In re Wogenstahl*, 902 F.3d at 627–28. In particular, in that case as in this one, we found that the petitioner's *Brady* claim fell "within the scenario contemplated by § 2244(b)(2)(B)," because he was raising claims that he did not raise in his first petition and he was relying on recently discovered facts. *Id.* at 628. Accordingly, we held that "Wogenstahl's petition is both

second-in-time and second or successive, and he must therefore pass through the gatekeeping mechanism of § 2244(b)(2)(B)." *Id.* at 628. So too here.[1]

## II. Application to File a Second or Successive Habeas Petition

Under § 2244(b)(2)(B), a claim for habeas relief based on new facts like Jackson's, rather than new law, *see* § 2244(b)(2)(A), must be dismissed unless:

> (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2)(B).

This Court "may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." *Id.* at § 2244(b)(3)(C). A prima facie showing involves the presentation of "sufficient allegations of fact together with some documentation that would 'warrant a fuller exploration in the district court.'" *In re Lott*, 366 F.3d 431, 433 (6th Cir. 2004) (quoting *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997)).

It is unclear precisely how Jackson obtained the two witness statements that he claims were suppressed under *Brady*, which bears on the question of whether "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence." 28 U.S.C. § 2244(b)(2)(B)(i). According to Jackson, police suppressed evidence that Rebecca Lewis, who was a key witness at trial, had initially described the suspect who had hit her in the head with a gun in a way that did not match Jackson, but did match a shorter alternative suspect, "Little Bee." Jackson also claims that a statement from a neighbor supports the inference that Little Bee committed the murders. Jackson suggests that these statements were unobtainable under Ohio law until the Ohio Supreme Court's decision in *State ex rel. Caster v. Columbus*,

---

[1]Jackson does not argue, nor would such an argument be successful, that *Napue* claims fare differently under *Wogenstahl* than the *Brady* claims at issue in this case.

89 N.E.3d 598 (Ohio 2016), expanded the discovery mechanisms available to defendants who had exhausted their direct appeals. However, *Caster* was not decided until December 2016, and Jackson presented these witness statements to us in April 2016. Thus, while Jackson may not have been able to obtain these witness statements until well after his trial, it cannot be because of the precedent overturned in *Caster*. However, Jackson's proposed petition also explains that "the exculpatory evidence was first disclosed by the State in Clemency-related Public Records Act litigation," which presumably would not have been available until Jackson's date of execution approached. (Habeas Petition, R. 1-2, Page ID #52.) We conclude that Jackson has a made a prima facie showing that the witness statements implicating Little Bee could not have been discovered earlier through the exercise of due diligence.

Jackson similarly argues that the facts underlying his *Brady/Napue* false testimony claim were unavailable until Ivana King provided Jackson's counsel with a declaration that law enforcement had intimidated her into falsely testifying that Jackson had confessed to the murders. Jackson has made a prima facie argument that this evidence was suppressed as well and that he could not have obtained it through the exercise of due diligence. *See In re McDonald*, 514 F.3d 539, 545 (6th Cir. 2008) (finding that claims regarding coerced testimony could not have been discovered for purposes of § 2244(b) application until key witness provided an affidavit regarding coercion).

Jackson has also met his obligation to make a prima facie showing under § 2244(b)(2)(B)(ii) that "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." At this stage, "we simply must determine whether there are 'sufficient allegations' together with 'some documentation' so as to require a district court to engage in additional analysis in order to ascertain whether but for the constitutional error, no reasonable factfinder would have found [Jackson] guilty of the underlying offense." *In re McDonald*, 514 F.3d at 547 (quoting *In re Lott*, 366 F.3d at 533).

The first constitutional error alleged is Jackson's *Brady* claim that the government suppressed eyewitness statements implicating an alternative suspect, Little Bee, who was shorter

than Jackson, as well as evidence of King's coerced testimony. To establish a *Brady* violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). In this case, the suppressed statements were both exculpatory and impeaching, and, for the reasons explained above, Jackson has made a prima facie case that the state suppressed this evidence.

Jackson has also shown that "but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense," which would suffice to demonstrate prejudice under *Brady*. 28 U.S.C. § 2244(b)(2)(B)(ii); *see In re Wogenstahl*, 902 F.3d at 629. For example, in *McDonald*, we found that granting leave to file a second or successive petition was appropriate after a key witness signed an affidavit that she had been coerced into providing perjured testimony. *McDonald* is distinguishable from this case in that "[a]t McDonald's trial, the state did not present any eyewitnesses who saw McDonald at the scene of the crime." *In re McDonald*, 514 F.3d at 547. But in evaluating a *Brady* claim, "a court must consider the materiality of withheld evidence only by evaluating the evidence collectively, not item by item." *Hughbanks v. Hudson*, 2 F.4th 527, 536 (6th Cir. 2021) (cleaned up). Here, the allegedly suppressed statement by Lewis, in combination with King's recantation of Jackson's confession, could undermine eyewitness accounts connecting Jackson to the crime. Another eyewitness, Nikki Long, also initially provided police with a statement regarding the murder suspect consistent with Lewis' description of a shorter perpetrator than Jackson; however, Jackson's trial counsel did not focus their defense on the height of the perpetrator because they were unaware that both Lewis and Long had provided an identical description in their first statements to police. The testimony of Jackson's co-defendant, Derrick Boone, would thus be left as the only eyewitness account that identified Jackson as the shooter. The Supreme Court has recognized that "incriminating testimony from inmates, suspects, or friends or relations of the accused" may have less probative value than "eyewitnesses with no evident motive to lie." *House v. Bell*, 547 U.S. 518, 552 (2006); *see also In re Keith*, No. 18-3544, 2018 WL 8807240, at *3 (6th Cir. Oct. 26, 2018) (granting leave to file a second or successive habeas petition despite existence of eyewitness testimony).

Under *Napue*, the prosecution must "ensure[] that it does not knowingly allow false testimony, and correct[] testimony known to be false." *United States v. Fields*, 763 F.3d 443, 463 (6th Cir. 2014). In this case, King's new declaration claims that she was coerced by police into stating that Jackson confessed to her. *Napue* claims also have a prejudice-like prong in that "a new trial is required if the false testimony could in any reasonable likelihood have affected the judgment of the jury." *Carter v. Mitchell*, 443 F.3d 517, 535 (6th Cir. 2006) (cleaned up). This threshold can be met when the knowingly misleading testimony is offered by a "key prosecution witness." *Id.* That is the case here, where King testified that Jackson told her "he had done two people," which we previously described as "quite incriminating evidence." *Jackson*, 681 F.3d at 763.

As the district court observed in its order transferring Jackson's petition, this is not his second federal habeas petition, but his fourth. However, in this instance, Jackson has met his burden to make "a prima facie showing that the application satisfies the requirements" of § 2244(b)(2)(B). 28 U.S.C. § 2244(b)(3)(C).

We **DENY** Jackson's motion to remand and **GRANT** him permission to file the proposed petition as to his *Brady* and *Napue* claims.

_____

**CONCURRENCE**

_____

KAREN NELSON MOORE, Circuit Judge, concurring.  I agree that *In re Wogenstahl*, 902 F.3d 621, 628 (6th Cir. 2018) (per curiam), compels us to conclude that Kareem Jackson's new habeas petition is "second or successive" within the meaning of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(b)(2), and thus that we must deny his motion to remand.  With that being the case, I agree that we should grant the relief that Jackson requests in the alternative:  authorization to pursue that petition in the district court.  *See* 28 U.S.C. § 2244(b)(3).  I write separately, however, to explain why I now believe that *Wogenstahl*—an opinion that I joined—was wrongly decided.  In the absence of *Wogenstahl*, I would conclude that Jackson's new petition is not second or successive and would thus grant his motion to remand.

As the majority opinion notes, AEDPA employs various gatekeeping mechanisms that inhibit a person's ability to pursue a "second or successive" habeas petition.  28 U.S.C. § 2244(b)(2).  Substantively, AEDPA restricts the sorts of second-or-successive petitions that a district court may entertain to those involving claims based on (1) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court," or (2) newly discovered facts that "would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *Id.*  Procedurally, AEDPA prevents a person from pursuing a "second or successive" petition in the district court without preauthorization from the court of appeals, which may be granted only if the proposed petition "makes a prima facie showing that the application satisfies" AEDPA's substantive requirements for second-or-successive petitions.  28 U.S.C. § 2244(b)(3)(A), (C).  Whether a petition qualifies as "second or successive" is thus of significant consequence for persons like Jackson who are seeking habeas relief.

Yet determining whether a petition is truly "second or successive" is not as simple as counting to two because "[t]he Supreme Court has made clear that not every numerically second

petition is 'second or successive' for purposes of AEDPA." *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006). Rather, "[t]he phrase 'second or successive petition' is a term of art," *Slack v. McDaniel*, 529 U.S. 473, 486 (2000), with a meaning informed at least in part by the historical "abuse of the writ doctrine," *Bowen*, 436 F.3d at 704. The abuse-of-the-writ doctrine is "a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions." *McCleskey v. Zant*, 499 U.S. 467, 489 (1991). But simply stated, "[u]nder the abuse of the writ doctrine, a numerically second petition is 'second' when it raises a claim that could have been raised in the first petition but was not so raised, either due to deliberate abandonment or inexcusable neglect." *Bowen*, 436 F.3d at 704.

Among the circumstances where the Supreme Court has recognized that a second-in-time petition is not "second or successive" is where the petition contains a claim that was unripe at the time of the earlier habeas petition(s). *See Panetti v. Quarterman*, 551 U.S. 930, 947 (2007). Because an unripe claim cannot be raised in a habeas petition, the failure to raise such a claim earlier does not amount to an abuse of the writ and thus does not render a subsequent petition including the claim second or successive. *See id.* A quintessential example is a claim that the petitioner is incompetent to be executed under *Ford v. Wainwright*, 477 U.S. 399, 409–10 (1986). *See Panetti*, 551 U.S. at 947. Such a claim does not ripen until execution is imminent, and thus will typically be unripe when a petitioner files their first habeas petition. *See Stewart v. Martinez-Villareal*, 523 U.S. 637, 644–45 (1998). Accordingly, in *Panetti*, the Court held that a *Ford* claim brought in a second-in-time petition did not trigger § 2244(b)'s gatekeeping requirements because the petition was not second or successive. 551 U.S. at 947. In this circuit, we have extended the Court's reasoning to cover ex-post-facto claims that turn on changes to the law that occurred after an earlier petition and thus were previously unripe. *See In re Jones*, 652 F.3d 603, 605–06 (6th Cir. 2010) (per curiam).

Jackson argues that the habeas petition before us is not second or successive because that it contains previously unripe claims brought under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1959). He argues that his *Brady* claim ripened when he obtained the underlying police report and witness statements through an Ohio Public Records Act request and that his *Napue* claim became ripe only after Ivana King disclosed the falsity of her trial

testimony. As the majority order correctly concludes, *Wogenstahl* forecloses Jackson's argument. There we held that a *Brady* claim becomes ripe when "the predicates underlying . . . [the] claim[]" (i.e., the suppression of the evidence in question) occur, even if the petitioner "was unaware of th[o]se facts" when they filed their first petition, 902 F.3d at 627–28. Because the allegedly suppressed evidence and King's allegedly false trial testimony occurred well before Jackson's earlier habeas petitions, *Wogenstahl* compels the conclusion that the two claims were ripe at that time and that his new petition is second or successive. *See id.*

Yet Jackson has convinced me that *Wogenstahl* was wrongly decided. Upon consideration of Jackson's arguments, I believe that his claims cannot be materially distinguished from the *Ford* claim addressed in *Panetti*. There are three considerations that informed the Court's holding in *Panetti*: (1) the "implications for habeas practice" of treating Jackson's habeas petition as second or successive; (2) AEDPA's purposes; and (3) the abuse-of-the-writ doctrine. *See Panetti*, 551 U.S. at 942–48. As recently explained by judges in the Fourth and Eleventh Circuits, those three considerations compel the conclusion that Congress did not intend to subject previously unavailable *Brady*-type[1] claims like Jackson's to § 2244(b)'s gatekeeping requirements for second-or-successive habeas petitions. *See Scott v. United States*, 890 F.3d 1239, 1256–58 (11th Cir. 2018) (unanimous panel concluding that, if not for prior precedent, petition including previously unavailable *Brady* claim would not be second or successive); *Long v. Hooks*, 972 F.3d 442, 486–88 (4th Cir. 2020) (en banc) (Wynn, J., concurring) (collecting cases).

First, the "implications for habeas practice" favor treating petitions raising previously unavailable *Brady*-type claims like Jackson's as second in time but not second or successive. *See Panetti*, 551 U.S. at 943. In *Panetti*, the Court explained that subjecting previously unraised *Ford* claims to § 2244(b)'s gatekeeping requirements was unwarranted in part because it would

---

[1]Like Jackson, I use the term "*Brady*-type claims" to cover traditional *Brady* claims of suppressed evidence and claims like Jackson's *Napue* false-testimony claim, because I think that the second-or-successive analysis is the same for both. These claims are similar in nature insofar as they are predicated on prosecutorial or police misconduct that taints the evidence presented at trial and employ a similar analytical framework to the point where there has been some blurring between the caselaw for the two doctrines. *See Brooks v. Tennessee*, 626 F.3d 878, 894–95 (6th Cir. 2010). In any case, even if one but not the other was second or successive on its own, it would not change my reasoning because the second-or-successive inquiry calls for an analysis of the petition as a whole, not a claim-by-claim analysis. *See In re Stansell*, 828 F.3d 412, 415–19 (6th Cir. 2016).

have "seemingly perverse" implications for habeas practice. *Id.* In order to preserve their ability to raise a *Ford* claim in the future, "conscientious defense attorneys would be obliged to file unripe (and, in many cases, meritless) *Ford* claims in each and every § 2254 application. This counterintuitive approach would add to the burden imposed on courts, applicants, and the States, with no clear advantage to any." *Id.* The same is true of *Brady*-type claims. Applying § 2244(b) to such claims incentivizes petitioners to raise them in their first petition (and every petition thereafter), even if those claims were completely meritless because the petitioner lacked any indication of suppressed evidence or (in the case of a *Napue* claim) false testimony. Otherwise, the petitioner would risk losing any later-discovered *Brady*-type claim to the heightened requirements for second-or-successive petitions under § 2244(b). AEDPA does not require such a burdensome exercise that benefits none of the parties or institutions involved. *See Panetti*, 551 U.S. at 943.[2]

Indeed, subjecting *Brady* and *Napue* claims to § 2244(b) implicates further "perverse" incentives well beyond those considered by the Court in *Panetti*. "[T]o subject *Brady* claims to the heightened standard of § 2244(b)(2) is to reward investigators or prosecutors who engage in the unconstitutional suppression of evidence with a 'win'—that is, the continued incarceration of a person whose trial was fundamentally unfair (and unconstitutional)." *Long*, 972 F.3d at 486 (Wynn, J., concurring). In other words, subjecting *Brady* and *Brady*-type claims to § 2244(b) rewards the culpable state actors for their misconduct with a heightened gatekeeping requirement that could prevent the petitioner from challenging that misconduct at all. Congress could not have intended to create such a perverse incentive structure with AEDPA. Accordingly, if anything, the "implications for habeas practice" provide an even stronger basis for concluding that previously unavailable *Brady*-type claims like Jackson's should not be treated as second or successive. *See Panetti*, 551 U.S. at 946 (explaining that the Court avoids interpretations of AEDPA that "'produce troublesome results,' 'create procedural anomalies,' and 'close our doors

---

[2]Moreover, our decision in *Hill v. Mitchell*, 842 F.3d 910 (6th Cir. 2016), compounds these practical concerns within this circuit. There, we held that newly discovered suppressed evidence cannot relate back to a catchall *Brady* claim for purposes of AEDPA's one-year statute of limitations. *Id.* at 924–25. Thus, even if a petitioner were to file a generic, catchall *Brady*-type claim attempting to protect against the possibility of later-discovered prosecutorial misconduct, *Hill* suggests that they would face independent barriers to relief beyond § 2244(b)'s gatekeeping requirements. *See id.*

to a class of habeas petitioners seeking review without any clear indication that such was Congress' intent.'").

Second, as in *Panetti*, subjecting previously unavailable *Brady*-type claims to § 2244(b)'s gatekeeping requirements would not further AEDPA's purposes: "comity, finality, and federalism." *Id.* at 945 (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 337 (2003)). Respect for states and state courts cautions against an approach—like the one in *Wogenstahl*—that incentivizes the filing of meritless collateral claims in order to protect against the possibility of raising a claim later. *See Panetti*, 551 U.S. at 946–47; *see also Strickler v. Greene*, 527 U.S. 263, 286 (1999) ("Proper respect for state procedures counsels against a requirement that all possible claims be raised in state collateral proceedings, even when no known facts support them."). And as the Eleventh Circuit explained in *Scott*, applying § 2244(b) to second-in-time *Brady* claims "is at odds with finality concerns" because it undermines the procedural fairness that finality promotes, and can, in cases where a *Brady*-type violation is ultimately established, result in new trials limited by faded memories and unavailable witnesses. 890 F.3d at 1251–52. "Whatever finality interest Congress intended for AEDPA to promote, surely it did not aim to encourage prosecutors to withhold constitutionally required evidentiary disclosures long enough that verdicts obtained as a result of government misconduct would be insulated from correction." *Id.* at 1252.

Third, treating petitions raising previously unavailable *Brady*-type claims as second in time but not second or successive aligns with the historical abuse-of-the-writ doctrine. The abuse-of-the-writ doctrine generally prohibits a petitioner from raising a claim that could have been raised in an earlier petition but was not "either due to deliberate abandonment or inexcusable neglect." *Bowen*, 436 F.3d at 704. And under the abuse-of-the-writ doctrine the prosecution's suppression of material evidence will excuse the failure to raise earlier a *Brady* claim pre-disclosure. *See Strickler*, 527 U.S. at 286. Thus, the abuse-of-the-writ doctrine supports withholding from the definition of "second or successive" those petitions raising previously unavailable *Brady*-type claims. *See Scott*, 890 F.3d at 1252–53.

In *Wogenstahl*, we reached the opposite conclusion by committing two fundamental errors. The first is that we applied an overly narrow understanding of the rule for unripe claims

from *Panetti*, concluding that a claim is "ripe" once the factual predicates for the claim occur, even if the petitioner is unaware of those facts. *See* 902 F.3d at 627–28. As the Eleventh Circuit explained in *Scott*, *Panetti* did not limit its holding in that manner. *See* 890 F.3d at 1256. Indeed, we did not rely on *Panetti* for that rule, instead citing *Jones*. *See Wogenstahl*, 902 F.3d at 627–28. But *Jones* does not compel that reading of *Panetti* either. In *Jones*, we explained that the petitioner's ex-post-facto claim was unripe—and thus not second or successive—because "the events giving rise to the claim had not yet occurred" when he had filed earlier habeas petitions. 652 F.3d at 605. This was in contrast to the petitioner's jury-composition claim, which was second or successive because it "challenge[d] events that occurred at his trial." *Id.* at 606. But neither of the conclusions in *Jones* addresses whether a *Brady*-type claim is ripe before disclosure of the violation occurs. In a very practical sense, disclosure or awareness of the suppressed evidence or false testimony in question is a necessary predicate for a *Brady*-type claim—a meritorious *Brady*-type claim simply cannot be brought prior to some form of disclosure—and thus such a claim is unripe until the disclosure occurs. *See Strickler*, 527 U.S. at 286; *Scott*, 890 F.3d at 1256; *see also Hill*, 842 F.3d at 925 ("[T]he basis for a *Brady* claim is *the evidence that was being suppressed*—not a suspicion that *something* was being suppressed."). Accordingly, *Brady*-type claims like Jackson's fit neatly into *Panetti*'s exclusion of petitions that include unripe claims from § 2244's definition of "second or successive."[3]

Our second error in *Wogenstahl* was to suggest that exempting *Brady* claims from the limitations on second-or-successive petitions "would considerably undermine—if not render superfluous—the second-or-successive rule." 902 F.3d at 627 (internal quotation marks and alteration omitted) (quoting *In re Coley*, 871 F.3d 455, 457–58 (6th Cir. 2017)). For this, we referred to cases rejecting interpretations of "second or successive" that would exclude a claim from § 2244(b)'s requirements *any* time that the claim could not have been previously raised. *See, e.g.*, *Magwood v. Patterson*, 561 U.S. 320, 335 (2010) (rejecting an interpretation of "second or successive" where the term "would *not* apply to a claim that the petitioner did *not*

---

[3]Even if *Brady*-type claims were, strictly speaking, ripe before disclosure occurs, I believe that the reasoning of *Panetti* would strongly support a rule that previously unavailable *Brady*-type claims do not render a habeas petition second or successive because such a rule would, as explained above: (1) avoid the perverse incentives that arise without a rule that *Brady*-type claims are not second or successive; (2) be consistent with AEDPA's purposes; and (3) align with the abuse-of-the-writ doctrine.

have a full and fair opportunity to raise previously"); *Coley*, 871 F.3d at 457 ("What the exception *cannot* mean is what Coley claims it means: that a petition is not second or successive whenever it relies on a rule that did not exist when the petitioner filed his first petition."). Such an interpretation of "second or successive" is invalid because the circumstances covered by § 2244(b) are, by definition, those in which the claim could not have been previously raised (either because they rely on a new rule of constitutional law or newly discovered facts that could not previously have been discovered through diligence). *See Magwood*, 561 U.S. at 335.

But concluding that second-in-time *Brady*-type claims are not second or successive does not render § 2244(b)'s gatekeeping requirements superfluous because doing so does not require the adoption of a rule that a petition is not second or successive *any* time that it raises claims that could not have been raised sooner. Rather, it recognizes a limited carve-out for claims that could not be brought sooner because of prosecutorial misconduct, leaving the gatekeeping provisions in place for claims based on other types of newly discovered evidence (for example, a claim of ineffective assistance of trial counsel predicated on counsel's failure to investigate an eyewitness). As explained above, there are good reasons—reasons grounded in AEDPA and the Court's interpretation of AEDPA in this context—to distinguish between these sorts of claims when determining whether a petition is second or successive.

In the end, however, as a panel we may not displace *Wogenstahl*, bound as we are by published prior precedent. That case requires that we treat Jackson's habeas petition as second or successive and deny his motion to remand because his petition cannot proceed in the district court without our preauthorization under § 2244(b)(3). Thus, with regret, I concur in the denial of Jackson's motion to remand.

———————————

**DISSENT**

———————————

BOGGS, Circuit Judge, dissenting. I agree with the majority that, under *In re Wogenstahl*, 902 F.3d 621 (6th Cir. 2018), Mr. Jackson's petition is second or successive, and I concur in denying his motion to remand. But I would also deny his application for authorization to file that second or successive petition.

The facts that Mr. Jackson alleges in his present claims, even if all true, would not show "by *clear and convincing evidence* that, but for constitutional error, *no* reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(ii) (emphases added). Assume that, in the absence of constitutional error, Ms. King would not have testified and the evidence that Mr. Jackson now challenges would not have been introduced at trial. As the Ohio Court of Appeals has noted, there was still other evidence, not drawn into question by Mr. Jackson's current claims, from which some reasonable juror would have convicted him. *State v. Jackson*, 2019 WL 6615076, at *6–7, ¶¶ 32, 34 (Ohio Ct. App. Dec. 5, 2019) (holding that "direct testimony that Jackson fired the shots that killed Hunter and Walker, and the evidence tying Jackson to the handgun retrieved from Williamson's apartment, which was found to have fired the shots that killed Hunter, . . . if found credible by a jury, would have been sufficient to convict Jackson").

The majority says that *if* Mr. Jackson proved all of his allegations *and if* his defense team had changed its legal strategy and been able to successfully impeach another eyewitness, then "the testimony of Jackson's co-defendant Derrick Boone would . . . be left as the only eyewitness account that identified Jackson as the shooter." Majority Order at 6. And, of course, the majority is correct that "'incriminating testimony from inmates, suspects, or friends or relations of the accused' *may* have less probative value than 'eyewitnesses with no evident motive to lie.'" *Ibid.* (emphasis added) (quoting *House v. Bell*, 547 U.S. 518, 552 (2006)). But "may have less probative value" is a far cry from clear and convincing evidence that *no* rational factfinder would

convict Mr. Jackson. All the more so because the alleged "evidence" is contingent on speculation about what his defense team might have done differently and with what effect.

As the majority agrees, a prima facie showing requires "sufficient allegations of fact together with some documentation that would 'warrant a fuller exploration in the district court.'" *In re Lott*, 366 F.3d 431, 433 (6th Cir. 2004) (quoting *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997)). Here, Mr. Jackson's allegations, even if proved, would not entitle him to relief. Thus, his allegations do not warrant fuller exploration in the district court, so he has not made the required prima facie showing. I therefore respectfully dissent from the grant of authorization to file a second or successive petition.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk