# SUPREME COURT OF THE UNITED STATES

## PAUL DAVID STOREY *v.* BOBBY LUMPKIN, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 21–6674.   Decided June 30, 2022

The petition for a writ of certiorari is denied.

Statement of JUSTICE SOTOMAYOR respecting the denial of certiorari.

The facts of this case offer a cautionary tale for those Courts of Appeals that have yet to define what constitutes a restricted "second or successive habeas corpus application," 28 U. S. C. §2244(b)(2), in the context of prosecutorial misconduct. I write to underscore how erroneous the Fifth Circuit's definition is and how it unfairly deprives individuals of an opportunity to raise serious claims of prosecutorial malfeasance in federal habeas proceedings.

After a jury convicted petitioner Paul David Storey of murdering Jonas Cherry in the course of a robbery, prosecutors argued for a death sentence. In the State's punishment-phase closing argument, a prosecutor told the jury: "[I]t should go without saying that all of Jonas's family and everyone who loved him believe the death penalty is appropriate." *Ex parte Storey*, 584 S. W. 3d 437, 447 (Tex. Crim. App. 2019) (Walker, J., dissenting). The jury sentenced Storey to death.

In December 2016, eight years after trial and months before Storey's scheduled execution, Storey's counsel learned that the prosecutor's assertion during the punishment-phase closing arguments was false. In truth, Cherry's parents vigorously and consistently opposed the State's choice

to seek the death penalty for Storey. Cherry's parents communicated their views to the State's prosecutors before trial, including the prosecutor who told the jury otherwise in closing. But the State never disclosed Cherry's parents' wishes to Storey or his counsel. Instead, the prosecutor knowingly and affirmatively misrepresented those wishes to the jury in order to secure a death sentence.

Based on this revelation, Storey sought postconviction relief in state court. He asserted that the State's misconduct during his prosecution violated the constitutional rules set forth in cases like *Brady* v. *Maryland*, 373 U. S. 83 (1963) (State's failure to turn over exculpatory evidence violates due process), and *Napue* v. *Illinois*, 360 U. S. 264 (1959) (State's elicitation of knowingly false testimony violates due process). Because Storey had previously filed an application for postconviction relief, Texas law required Storey to establish that the factual basis for his new claims was unavailable when he filed his first application. See Tex. Code Crim. Proc. Ann., Art. 11.071, §5(a)(1) (Vernon Supp. 2006). A state postconviction court found this standard satisfied, held that the prosecutor's knowingly false statement in closing argument violated the Constitution, and recommended that Storey receive a new punishment trial.

A fractured Texas Court of Criminal Appeals reversed. The majority held that Storey could not bring his misconduct claims because he had failed to show that those claims' factual basis was not previously available through the exercise of reasonable diligence. The majority reached this conclusion in part because although Storey's prior postconviction counsel (who by then was deceased) had a strong reputation for diligence, Storey had been unable to present specific evidence proving that this deceased attorney had exercised diligence in his particular case. *Ex parte Storey*, 584 S. W. 3d, at 439. Judge Yeary and Judge Walker filed dissents, both joined by Judge Slaughter.

Storey then sought relief in federal court, which the Fifth

Circuit ultimately denied on federal procedural grounds. See 8 F. 4th 382 (2021). The State argued that Storey's request for relief constituted a "second or successive habeas corpus application" under 28 U. S. C. §2244(b), which bars federal courts from considering such applications except in limited circumstances not present here. Storey maintained that his request was not "'an abuse of the writ'" under this Court's case law and therefore not successive, given that he was not aware of the State's misconduct until late 2016. *Banister* v. *Davis*, 590 U. S. \_\_\_, \_\_\_ (2020) (slip op., at 7); see *ibid.* (explaining that if a "later-in-time filing would have 'constituted an abuse of the writ'" under "'our prior habeas corpus cases,'" "it is successive; if not, likely not"). The Fifth Circuit concluded otherwise, finding itself bound by Circuit precedent holding that "'*Brady* claims raised in second-in-time habeas petitions are successive regardless of whether the petitioner knew about the alleged suppression when he filed his first habeas petition.'" 8 F. 4th, at 392 (quoting *In re Will*, 970 F. 3d 536, 540 (CA5 2020)).

As I have previously explained, the Fifth Circuit's "illogical rule" defining "second or successive" in this fashion "rewards prosecutors who successfully conceal their *Brady* and *Napue* violations until after an inmate has sought relief from his convictions on other grounds." *Bernard* v. *United States*, 592 U. S. \_\_\_, \_\_\_ (2020) (dissenting opinion) (slip op., at 4). "Under this rule, prosecutors can run out the clock and escape any responsibility for all but the most extreme violations." *Id.*, at \_\_\_ (slip op., at 5).

The Fifth Circuit's rule contravenes this Court's precedent. *Panetti* v. *Quarterman*, 551 U. S. 930 (2007), holds that a petition bringing a claim that was not ripe when the petitioner filed his first-in-time petition is not "second or successive." That reasoning "applies with full force to *Brady* claims" like Storey's, where the issue is that the State unlawfully failed to disclose evidence favorable to the

defense, and the petitioner is not aware of that evidence un-
til after the first-in-time petition. *Bernard*, 592 U. S., at
___–___ (SOTOMAYOR, J., dissenting) (slip op., at 4–5). By
ignoring *Panetti*'s logic, the Fifth Circuit's rule improperly
"produce[s] troublesome results, create[s] procedural anom-
alies, and close[s] our doors to a class of habeas petitioners
seeking review without any clear indication that such was
Congress' intent." *Panetti*, 551 U. S., at 946 (internal quo-
tation marks omitted).*

The posture of Storey's case renders it a poor fit for this
Court's review. His case, however, illustrates the injustice
that can flow from an overbroad view, unsupported by prec-
edent, of what constitutes a "second or successive" habeas
petition. Prosecutors not only failed to disclose Cherry's
parents' unwavering desire that Storey not be sentenced to
death, but also misled the jury in summation to successfully
secure a death sentence. The State then ran out the clock
by failing to disclose its malfeasance throughout Storey's
initial postconviction proceedings. When Storey later
sought postconviction relief based on the facts the State had
misrepresented, the sole court to decide the merits of his
misconduct claims found him entitled to receive a new pun-
ishment trial. But under the Fifth Circuit's irrational rule,
it was too late: Storey should have raised these claims in
his first federal habeas petition, regardless of the extent of
the State's malfeasance or whether he could have known of
it at that time. As a result, Storey now faces the possibility
of execution without resolution of his claims. I trust that

——————
*At least three other Courts of Appeals have adopted the same errone-
ous interpretation as the Fifth Circuit. See *In re Wogenstahl*, 902 F. 3d
621, 626–628 (CA6 2018) (*per curiam*); *Brown* v. *Muniz*, 889 F. 3d 661,
668–671 (CA9 2018); *Tompkins* v. *Secretary, Dept. of Corrections*, 557
F. 3d 1257, 1259–1260 (CA11 2009) (*per curiam*). But see *Scott* v. *United
States*, 890 F. 3d 1239, 1254–1258 (CA11 2018) (disagreeing with *Tomp-
kins* at length but following it as binding); *In re Jackson*, 12 F. 4th 604,
611–616 (CA6 2021) (Moore, J., concurring) (opining that *Wogenstahl*
was wrongly decided).

other federal courts will pay closer heed to *Panetti* and *Banister* when they confront this important issue.