# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-3371

_____

Garfield Feather

*Appellant*

v.

United States of America

*Appellee*

_____

Appeal from United States District Court for the
District of South Dakota - Southern Division

_____

Submitted: October 19, 2021
Filed: November 22, 2021

_____

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

In 1994, after a three-week trial, a jury convicted Garfield Feather and three co-defendants of sexually abusing five nieces. In recently denying Rule 60(b)(6) motions by Feather's co-defendants, which we treated as successive motions for post-conviction relief under 28 U.S.C. § 2255, we summarized the extensive

post-conviction proceedings that followed the trial, all conducted by the same district court judge[1] who presided at trial:

> After a hearing, the district court denied defendants' post-trial motion for new trial based on the alleged anti-Native American bias of one juror. On direct appeal, we affirmed the convictions and the denial of a new trial. United States v. Rouse, 111 F.3d 561, 565 (8th Cir.), reconsidering 100 F.3d 560 (8th Cir. 1996), cert. denied, 522 U.S. 905 (1997) ("Rouse I"). In 1999, defendants filed a second motion for new trial alleging that the four victims who testified at trial recanted allegations of sex abuse. See Fed. R. Crim. P. 33(b)(1). The district court denied this motion after a four-day evidentiary hearing, finding "no reasonable probability that the recantations would produce an acquittal if a new trial were held." United States v. Rouse, 329 F. Supp. 2d 1077, 1092 (D.S.D. 2004). We again affirmed. United States v. Rouse, 410 F.3d 1005, 1009 (8th Cir. 2005) ("Rouse II").

Rouse v. United States, 14 F.4th 795, 798 (8th Cir. 2021) ("Rouse III").

In 2018, Feather filed this motion for § 2255 relief, which the district court, without objection by the government, treated as an initial § 2255 motion because Feather's first *pro se* request for § 2255 relief was improperly dismissed in 2010. Feather raises three claims. The substance of each was also raised by his co-defendants in Rouse III. As the district court recognized, Feather's claims are not subject to the significant restrictions Congress placed on successive § 2255 motions in the Antiterrorism and Effective Death Penalty Act of 1996. See 28 U.S.C. § 2255(h).

In a 25-page Memorandum Opinion and Order, the district court dismissed each claim on the merits, without an evidentiary hearing, concluding that one was

---

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

untimely under § 2255(f). <u>Feather v. United States</u>, CIV 18-4090 (D.S.D. Sept. 14, 2020). Feather appeals the dismissal of each claim on the merits and the court's failure to grant an evidentiary hearing. Reviewing the dismissal of § 2255 claims *de novo*, we affirm. <u>Ingram v. United States</u>, 932 F.3d 1084, 1088 (8th Cir.), <u>cert. denied</u>, 140 S.Ct. 610 (2019). We separately discuss each claim. The reader is referred to <u>Rouse I</u>, <u>Rouse II</u>, and <u>Rouse III</u> for additional facts and analysis.

## I. The Flawed Scientific Evidence Due Process Claim

At trial, the government presented testimony by pediatrician Richard Kaplan, who examined the young victims, regarding his medical findings and what the children told him, and by Dr. Robert Ferrell, who testified he conducted colposcopic examinations of the five victims that revealed significant evidence of sexual abuse. <u>See</u> <u>Rouse I</u>, 111 F.3d at 565. We described this medical evidence as "powerful" in affirming the denial of a joint new trial motion in <u>Rouse II</u>, 410 F.3d at 1008. For an additional summary of this trial evidence, <u>see</u> <u>Hubbeling v. United States</u>, 288 F.3d 363, 367 (8th Cir. 2002), affirming the denial of co-defendant Russell Hubbeling's initial motion for § 2255 relief.

In support of his § 2255 motion, Feather submitted affidavits from Drs. Joyce Adams and Janice Ophoven, experts in pediatric sexual assault, criticizing the qualifications, examination techniques, and medical conclusions of Dr. Ferrell. Feather argues that, based on changes in forensic medical science noted by Drs. Adams and Ophoven, the government relied on "fundamentally defective" evidence that was "inconsistent with sound scientific methods." In his reply brief to the district court, relying on decisions of the Third and Ninth Circuits, Feather argued this flawed scientific evidence rendered his trial fundamentally unfair in violation of his Fifth Amendment Due Process rights. <u>See</u> <u>Lee v. Glunt</u>, 667 F.3d 397 (3d Cir. 2012) ("<u>Lee I</u>"); <u>Lee v. Houtzdale SCI</u>, 798 F.3d 159 (3d Cir. 2015) ("<u>Lee II</u>"); <u>Gimenez v. Ochoa</u>, 821 F.3d 1136 (9th Cir.), <u>cert. denied</u> 137 S.Ct. 503 (2016). The district court,

recognizing that we have not decided whether use of flawed expert testimony could result in a constitutional violation, assumed this due process claim is cognizable and denied it on the merits:

> Even if Dr. Ferrell's reliance on his colposcope findings is outdated, it did not undermine the fundamental fairness of the entire trial. And even assuming Dr. Ferrell couldn't testify that his physical findings alone establish sexual abuse, there is ample other evidence on which a jury could find Feather guilty beyond a reasonable doubt. . . . [T]he victims' testimony at trial corroborated portions of other witnesses' testimony about the sexual abuse. Also, Dr. Kaplan and Dr. Ferrell testified about spontaneous statements the children made to them, and those statements corroborated the victims' testimony at trial. The evidence and testimony presented at the 2001 evidentiary hearing on recantations further supports a finding that the victims' trial testimony was credible.

Order at p.17.[2] In <u>Rouse III</u>, we reached the same conclusions in denying the Rule 60(b) motions of Feather's co-defendants on the merits. 14 F.4th at 803-04.

On appeal, Feather argues the district court erred in rejecting his claim that the government's flawed forensic medical evidence undermined the fundamental fairness of the entire trial, violating his right to due process. In <u>Rhodes v. Smith</u>, we "assume[d] for purposes of the argument" that a conviction based on "false" expert testimony would violate the Due Process Clause. 950 F.3d 1032, 1036 n.2 (8th Cir.), <u>cert. denied</u>, 141 S. Ct. 365 (2020). Applying the "clear and convincing evidence" test for successive habeas petitions, we concluded in <u>Rhodes</u> that the defendant's "new peer-reviewed medical literature" and state Department of Natural Resources

---

[2]On appeal, the government does not challenge the district court's conclusion that Feather's claims based on newly discovered medical evidence were timely under the applicable one-year statute of limitations. <u>See</u> § 2255(f)(4); <u>Anjulo-Lopez v. United States</u>, 541 F.3d 814, 818 (8th Cir. 2008).

survey data failed to prove the government's expert testimony was "false," and there was independent support for the murder conviction beyond this testimony. Id. at 1034, 1036-37; see 28 U.S.C. § 2244(b). Here, too, assuming without deciding that the government's use of false or discredited scientific evidence could violate a criminal defendant's right to due process, like the district court we conclude that Feather failed to prove that his trial and conviction were fundamentally unfair.[3]

## II. The Freestanding Actual Innocence Claims

Feather argues his conviction violated both the Fifth Amendment Due Process Clause and the Eighth Amendment prohibition on cruel and unusual punishment because "significant new proof" demonstrates that he was actually innocent of the child sex abuse offenses. In support, he relies on (i) new affidavits from the now-adult victims reasserting the recantations at issue in Rouse II, and (ii) the previously discussed affidavits from medical experts Adams and Ophoven questioning the qualifications, examination techniques, and medical conclusions of government trial expert Ferrell. Feather argues this new evidence, individually and in combination, establishes his innocence.

The Supreme Court has not decided "whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." McQuiggin v. Perkins, 569 U.S. 383, 392 (2013). In Dansby v. Hobbs, a death penalty case, we noted the Supreme Court has established that the threshold for such a claim, *if* it were recognized, would be "extraordinarily high," requiring:

> more convincing proof than the "gateway" standard that allows for consideration of otherwise defaulted constitutional claims upon a

_____

[3]In Lee II, the government conceded that subsequent scientific developments made its trial expert evidence "invalid." 798 F.3d at 167. In Gimenez, the Ninth Circuit affirmed the denial of successive habeas corpus relief. 821 F.3d at 1145.

showing of actual innocence. Thus, on a freestanding claim of actual innocence, it is not sufficient that petitioner shows it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.

766 F.3d 809, 816 (8th Cir. 2014) (cleaned up), cert. denied 577 U.S. 828 (2015), citing House v. Bell, 547 U.S. 518, 554-55 (2006), Herrera v. Collins, 506 U.S. 390, 417 (1993), and Schlup v. Delo, 513 U.S. 298, 327 (1995). Once again, we need not decide whether a freestanding actual innocence claim is cognizable because, as in Rouse III, Feather's "newly discovered victim recantations, medical science evidence, and [juror bias evidence] do not meet the extraordinarily high burden of proving actual innocence." 14 F.4th at 803 (quotations omitted).

**A.** Feather relies on 2018 affidavits from four of the five sex abuse victims. These four testified at the new trial hearing in 1999 that they lied when they accused their uncles of sex abuse "during [pretrial] interviews by a [Bureau of Indian Affairs] investigator, an FBI agent, the prosecutor, and later at trial because they believed that lying would enable them to return home." Rouse II, 410 F.3d at 1007. In the new affidavits, each of the now-adult victims avers that she was not, or did not recall being, sexually assaulted and was confused, scared, coached, and pressured to falsely accuse her uncles before and during trial. In dismissing the 1999 motion for new trial by all defendants, including Feather, the district court determined that the victims' then-more-contemporaneous recantations were "the product of family pressure and therefore not credible," a decision we affirmed in Rouse II, 410 F.3d at 1009.

On appeal, both parties ignore a well-established Eighth Circuit principle: "When newly discovered evidence is the ground for a § 2255 motion, the district court should apply the same substantive test which governs a motion for new trial under Fed. R. Crim. P. 33 premised on the same ground." Rouse III, 14 F.4th at 800-01, quoting Lindhorst v. United States, 585 F.2d 361, 365 n.8 (8th Cir. 1978). The

2018 affidavits, signed more than twenty years after the trial, cannot meet this rigorous test. See Rule 33(b)(1); United States v. Bell, 761 F.3d 900, 911-12 (8th Cir.), cert. denied, 574 U.S. 1001 (2014). In addition, we agree with the district court that motions for new trial based on recantations are viewed with disfavor and the recantations at issue conflict with other record evidence including the victims' contemporaneous statements to investigators, to counselors, and to Dr. Richard Kaplan, their examining pediatrician. See Rouse II, 410 F.3d at 1009.

**B.** Likewise, the newly discovered medical evidence presented with the expert affidavits of Drs. Adams and Ophoven does not satisfy the extraordinarily high burden of proving a freestanding constitutional claim of actual innocence if such a claim is cognizable. The district court found the proposed testimony of Drs. Adams and Ophoven credible but concluded that their criticism of the medical evidence presented by Dr. Ferrell at trial "is not evidence that exonerates Feather." Moreover, the court reasoned, "there was ample other evidence of Feather's guilt presented at trial" including Dr. Kaplan's testimony based on his physical examinations and what the victims told him, and independent corroboration of the medical evidence of sex abuse by fact witness testimony. Whether considered individually or together, we agree with the district court's conclusion "that if Feather's new medical and recantation evidence would have been presented at trial it would have established, at most, conflicting testimony" and thus "a reasonable juror considering all the evidence, old and new, could still convict Feather."

### III. The Renewed Claim of Juror Bias

Following trial, Verna Severson (now Boyd) called the Clerk's Office to complain that her co-worker, Patricia Pickard, should not have served on the jury because she is prejudiced against Native Americans. After an evidentiary hearing at which Boyd and Pickard testified, the district court denied defendants' motion for a new trial on this ground, based on its finding that Pickard's denial was more credible

than Boyd's accusation, and on independent evidence from two jurors that Pickard had made no remarks reflecting bias and no improper outside influence affected the jury. See Rouse I, 111 F.3d at 573. Feather now argues he is entitled to § 2255 relief because his Sixth Amendment right to an impartial jury was tainted by anti-Native American bias. He supports this claim with a 2018 affidavit from Boyd alleging that a trial juror told her about anti-Native American jokes and statements made in the jury room. He argues the Supreme Court made this evidence admissible when it relaxed the "no impeachment rule" of Federal Rule of Evidence 606(b) in Peña-Rodriguez v. Colorado, ___ U.S. ___, 137 S. Ct. 855, 869 (2017).

The district court, after again stating it "is convinced that racism did not influence the jury verdict in this case," properly concluded that this Sixth Amendment claim, filed over 20 years after Feather's conviction, is untimely under § 2255(f)(1). The exceptions in §§ 2255(f)(2) and (4) do not apply because the government created no impediment to filing the claim and its factual allegations have been apparent since shortly after the 1994 conviction. Section 2255(f)(3) does not apply because Peña-Rodriguez neither "recognized a new right" nor made it "retroactively applicable to cases on collateral review." See Rouse III, 14 F.4th at 802 n.5. On appeal, Feather argues the one-year statute of limitations in § 2255(f) is irrelevant when a defendant presents new evidence showing that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." See McQuiggin, 569 U.S. at 386 (applying the Schlup actual innocence gateway to claims barred by a statute of limitations). However, our conclusion in Part II that Feather's newly discovered evidence falls short of meeting the Schlup gateway standard confirms that this juror bias claim is time-barred.

Even if the claim is not time-barred, it fails on the merits. As we explained in rejecting the same claim in Rouse III, 14 F.4th at 802:

Peña-Rodriguez's narrow exception to the no-impeachment rule simply does not apply. Verna Boyd was not a juror. She has no first-hand knowledge of what was said during deliberations, so Appellants have no "compelling evidence that another juror made clear and explicit statements indicating" that racial animus motivated her vote to convict. The Supreme Court in Peña-Rodriguez gave no hint it intended to allow open-ended discovery of juror deliberations based on the averrals of third parties who may have strong motives to undermine a jury's verdict, but have no first hand knowledge of what jurors may actually have relied on in reaching that verdict. Such a ruling would be directly contrary to Federal Rule of Evidence 606(b).

## IV. Denial of an Evidentiary Hearing

Feather argues the district court erred in denying an evidentiary hearing that is needed to obtain and consider testimony from Drs. Adams and Ophoven, the victims, Dr. Ferrell (Dr. Kaplan is deceased), Boyd, and jurors. We review the denial of an evidentiary hearing for abuse of discretion. Noe v. United States, 601 F.3d 784, 792 (8th Cir. 2010). However, "the determination that no hearing was required obligates us to look behind that discretionary decision to the court's rejection of the claim on its merits, which is a legal conclusion that we review de novo." Saunders v. United States, 236 F.3d 950, 952 (8th Cir.), cert. denied, 533 U.S. 917 (2001).

In denying a hearing, the district court recognized the governing standard:

> While a petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that he is entitled to no relief, no hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.

New v. United States, 652 F.3d 949, 954 (8th Cir. 2011) (cleaned up). The district court carefully considered and rejected each of Feather's substantive claims on the

merits, denying an evidentiary hearing because "the motion, files and records of the case and related cases, along with the applicable law, show that Feather is not entitled to relief under 28 U.S.C. § 2255." The district court had more than twenty years experience with the case. This court, likewise, has appellate experience with every issue that Feather now seeks to relitigate based on "newly discovered" evidence. After careful review of the record relating to this § 2255 motion, we agree with the district court that an evidentiary hearing was neither required nor necessary.

## V. Conclusion

The Order of the district court dated September 14, 2020 is affirmed.

_____