NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0163n.06

No. 20-3863

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 25, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| IN RE: DANNY HILL, | ) | |
| | ) | |
| Movant, | ) | ORDER |
| | ) | |
| _____/ | ) | |

**Before: MOORE, CLAY, and STRANCH, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** In 1986, Danny Hill, then eighteen years old, was convicted of aggravated murder and sentenced to death. One of the prime pieces of evidence showing that Hill participated in the criminal acts that resulted in the death of twelve-year-old Raymond Fife was a bitemark on Fife's penis that a forensic odontologist stated could have been made only by Hill. Modern forensic scientists no longer endorse using bitemarks to identify perpetrators of crimes. Not only that, but five forensic scientists, including a former president of the American Board of Forensic Odontology ("ABFO"), now unequivocally state that the mark found on Raymond Fife cannot be construed as a human bitemark. The en banc court has directed this panel to decide whether this evidence "can meet the gatekeeping provision of [28 U.S.C.] § 2244(b)(2)(B)[.]" *In re Hill*, 81 F.4th 560, 572 (6th Cir. 2023) (en banc).

We determine that Hill has made "a prima facie showing that the application satisfies the requirements of this subsection." 28 U.S.C. § 2244(b)(3)(C). Accordingly, we grant Hill's motion for authorization to file a second or successive habeas application.

## I. BACKGROUND

### A. Trial Evidence

At this point, the evidence submitted at Hill's trial is well-trod territory. *See In re Hill*, 81 F.4th at 564 (citing cases related to Hill's challenges to his conviction). In 1986, Hill and Timothy Combs were convicted of murdering Raymond Fife. *Id.* Fife was beaten, raped, strangled, burned, and then left to die. *Id.* Fife died from his injuries two days later after his father found him in the field where he was left. *Id.*

We summarize the portions of the trial evidence involving the bitemarks on Fife's penis. The state introduced expert testimony from Dr. Curtis Mertz, who testified that: "It's my professional opinion, with reasonable degree of medical certainty, that Hill's teeth, as depicted by the models and the photographs that I had, made the bite on Fife's penis." *State v. Hill*, 595 N.E.2d 884, 889 (Ohio 1992). Dr. Mertz was a practicing dentist "certified by the American Board of Forensic Odontology" ("ABFO")[1] R. 26[2] (Trial Tr. at 293) (Page ID #2368). In his own words, "forensic odontology is primarily the relationship of the law to dentistry . . . [a]nd this encompasses dental identification." *Id.* at 295 (Page ID #2370). Dr. Mertz examined Fife's penis, where the alleged bite occurred, in the morgue and "photographed it in black and white and color . . . ." *Id.* at 304 (Page ID #2379). He testified that "[he] saw what [he] felt was a human bite mark. The impressions of . . . three upper imprints and the possibility of two lower teeth imprints that were not as distinct as the other." *Id.* at 305 (Page ID #2380). In his opinion, the marks were fresh. *Id.*

---

[1]Dr. Mertz was one of the founding members of the organization and was voted to serve as its first president. R. 26 (Trial Tr. at 293–94, 344) (Page ID #2368–69, 2419); R. 27 (Trial Tr. at 199–200) (Page ID #2621–22).

[2]All of the record citations in this order refer to the trial transcripts in 4:96-cv-00795, which is the district court record for Hill's previous petition for a writ of habeas corpus.

Based on his initial examination of the body at the morgue, Dr. Mertz concluded that he "would look for a suspect that had a space between his two central incisors and a fractured upper right central incisor number 8 in the universal number system, and that the fracture was the distal or the most backward portion of the tooth." *Id.* at 315 (Page ID #2390). This matched a fracture in Hill's incisor, tooth number eight. R. 27 (Trial Tr. at 46–47) (Page ID #2468–69). In forming his expert opinion, Dr. Mertz made an "accurate model" of Hill's and Combs's teeth, conducted a clinical examination of their teeth, and took x-rays. R. 26 (Trial Tr. at 316–17) (Page ID #2391–92). In assessing Hill's teeth, Dr. Mertz noticed Hill's "upper right central incisor to be chipped on the incisal edge," and concluded that Hill bit Fife's penis. *Id.* at 317, 321 (Page ID #2392, 2396). When the mark on Fife's penis turned out to be "almost exactly one-third less in size" than Hill's teeth, Dr. Mertz attributed any discrepancy between the size of the bitemark and the size of Hill's teeth to "the probability that the penis was in an erected state at the time . . . ." *Id.* at 321–22, 340 (Page ID #2397–98, 2415). Based on this evidence, Dr. Mertz's opinion was "very strong that you can exclude Combs, and . . . slightly stronger that it is Hill's bite" that could be identified on Fife's penis. *Id.* at 336 (Page ID #2411). His analysis was guided by "the American Board of Forensic Odontology Scoring Sheet for bite mark analysis . . . ." *Id.* at 333–34 (Page ID #2408–09). When asked if an eighteen-year old's teeth could have made the mark on Fife's penis if it was not erect, Dr. Mertz opined that it was "unlikely that they would be that small on an average and having this larger space." *Id.* at 343 (Page ID #2418).

Hill's expert, Dr. Levine, agreed that a human bit Fife and that the bite had to come from either Combs or Hill. *See Hill*, 595 N.E.2d at 889. Dr. Levine, like Dr. Mertz, was certified by ABFO and had served as president of the organization. R. 27 (Trial Tr. at 182) (Page ID #2604).

Relying on the same evidence as Dr. Mertz, Dr. Levine concluded that a human bit Fife but that it was not possible to conclude with scientific certainty whether Combs or Hill made the bitemark. *Id.* at 190–92 (Page ID #2612–14). Dr. Mertz acknowledged that one of the marks found was "likely" made by Hill alone. *Id.* at 196–97 (Page ID #2618–19).

## B. Procedural History

As we have noted, Hill has challenged the lawfulness of his trial, conviction, and death sentence on numerous occasions over the decades. *See In re Hill*, 81 F.4th at 564. Rather than restate the entire procedural history, we observe that the sole relevant question we must address today was left to us by the most recent en-banc-court decision: "whether new evidence that was unavailable at trial can meet the gatekeeping provision of [28 U.S.C.] § 2244(b)(2)(B)[.]" *Id.* at 572.[3]

## II. DISCUSSION

Under § 2244(b)(2)(B), a second or successive claim for habeas relief based on new facts must be dismissed unless it meets certain gatekeeping provisions. Before a district court may entertain such an application, this court must first authorize the district court to consider it.

## A. Second or Successive Authorization Procedure

We start with the text. Section 2244 governs the procedures for the filing of "second or successive" habeas applications. 28 U.S.C. § 2244(b)(2). Relevantly, "[a] claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed" unless certain gatekeeping provisions are met. *Id.* Under

---

[3]Although, before the en banc court, the Warden argued that Hill forfeited his ability to seek permission to file a second or successive habeas petition, D. 48 at 20, the en banc court clearly rejected this argument when it directed us to address the issue.

§ 2244(b)(2)(B), a second or successive claim for habeas relief based on new facts must be dismissed unless it meets the following gatekeeping provisions:

> (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2)(B). But "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." *Id.* § 2244(b)(3)(A). "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." *Id.* § 2244(b)(3)(C). "A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section." *Id.* § 2244(b)(4).

This statutory scheme sets up a straightforward system for a habeas applicant who seeks permission to file a second or successive habeas application. Before filing a second or successive habeas application in the district court, the applicant must first seek authorization to do so in the appropriate court of appeals. At the authorization stage, we do not resolve the merits of the habeas application. Instead, our consideration is limited to whether the movant has made a prima facie showing that the application satisfies the requirements of § 2244(b). *Id.* § 2244(b)(3), (4). This includes considering whether the claim "was presented in a prior application," *id.* § 2244(b)(1), and whether a claim not presented in a prior application otherwise satisfies § 2244(b)(2)(A) or (B).

This is the mechanism Congress has prescribed. Before a state prisoner may file a second or successive habeas application in the district court, he or she must first file a motion seeking authorization to do so. *Id.* § 2244(b)(3)(A). Essentially, Congress requires habeas applicants to satisfy two gatekeeping measures. First, a panel of the appropriate court of appeals must grant authorization to the district court to consider a habeas application. *Id.* § 2244(b)(3)(A). This is the first gate. Second, a district court must then consider whether the authorized application "satisfies the requirements of this section," i.e., the requirements enumerated under § 2244(b) plus the additional gatekeeping requirements enumerated in § 2244(a). *Id.* § 2244(b)(4). This is the second gate.

We first described this procedure in *In re Siggers*, where we discussed the additional procedural hurdles AEDPA applies to second or successive habeas applications, including the requirement that the applicant first move in the court of appeals for authorization. 132 F.3d 333, 335 (6th Cir. 1997). It was not until 2004, however, that we addressed what exactly a movant must do to make a prima facie showing when seeking authorization to file a second or successive habeas application. *See In re Lott*, 366 F.3d 431, 433 (6th Cir. 2004) (order); *see also Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997) (recognizing that the prima facie standard is not further described "in the statutory language or history"). We have held that "'[p]rima facie' in this context means simply sufficient allegations of fact together with some documentation that would 'warrant a fuller exploration in the district court.'" *In re Lott*, 366 F.3d at 433 (quoting *Bennett*, 119 F.3d at 469). As we have explained, this is a "lenient prima facie standard . . . ." *Id.*; *accord In re Jackson*, 12 F.4th 604, 609–11 (6th Cir. 2021) (order). "Such a 'prima facie showing . . . is not a difficult standard to meet.'" *In re McDonald*, 514 F.3d 539, 544 (6th Cir. 2008) (quoting *In*

*re Lott*, 366 F.3d at 432). That a movant need not show much to make a prima facie showing "is further reinforced by subsection (b)(3)(E) . . . . Congress has emphasized the need for quick action by the court without further review." *In re Lott*, 366 F.3d at 433.

The Supreme Court recognizes this distinction—where the court of appeals determines the existence of a prima facie case and the district court thoroughly explores the merits of the gatekeeping requirement. As Justice Thomas has put it, the gatekeeping requirement at the district court "differs from the one that applicants must satisfy in order to obtain permission from a court of appeals to file a second or successive petition. . . . [A] court of appeals may authorize such a filing only if it determines that the applicant makes a 'prima facie showing' that the application satisfies the statutory standard. § 2244(b)(3)(C). But to survive dismissal in the district court, the application must actually 'show' that the claim satisfies the standard." *Tyler v. Cain*, 533 U.S. 656, 661 n.3 (2001). The authorization stage is not an adjudication on the merits of the second or successive gatekeeping provisions, nor is it an adjudication on the merits of the habeas application itself. *See id.* at 664 ("Under [AEDPA], before a state prisoner may file a second or successive habeas application, he 'shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.'" (quoting 28 U.S.C. § 2244(b)(3)(A))).

Our sibling circuits also follow this two-gate approach. Gate one is authorization at the court of appeals applying a lenient prima facie standard. Gate two is at the district court on the merits. Every numbered circuit has adopted this approach.[4] "*[G]ate one* is at the circuit court

---

[4]*See, e.g.*, *Rodriguez v. Superintendent, Bay State Corr. Ctr.*, 139 F.3d 270, 273 (1st Cir. 1998); *Bell v. United States*, 296 F.3d 127, 128 (2d Cir. 2002) (per curiam); *Goldblum v. Klem*, 510 F.3d 204, 219 (3d Cir. 2007); *In re Williams*, 330 F.3d 277, 281 (4th Cir. 2003); *Reyes-Requena v. United States*, 243 F.3d 893, 898–99 (5th Cir. 2001); *Johnson v. United States*, 720 F.3d 720, 720 (8th Cir. 2013); *Woratzeck v. Stewart*, 118 F.3d 648, 650 (9th Cir. 1997) (per curiam); *United States v. Murphy*, 887 F.3d 1064, 1068 (10th Cir. 2018); *In re Holladay*, 331 F.3d 1169, 1173–74 (11th Cir. 2003).

level where a preliminary assessment occurs based on the application; *gate two* is at the district court level where a record is made and a final assessment occurs." *Case v. Hatch*, 731 F.3d 1015, 1029 (10th Cir. 2013). This does not mean that every application that is authorized to be filed will succeed on the merits. The district court must independently and thoroughly review the record to ensure that the applicant has satisfied § 2244(b)'s gatekeeping requirements before addressing the merits of the applicant's habeas claim. "In light of these principles, it is clear that Congress did not intend to bind the district court in any way by a court of appeals' preliminary examination of the substantive requirements under section 2244(b)(2), except to the extent that, if a court of appeals finds that a petitioner has made a prima facie showing, the district court is obligated to conduct an independent gatekeeping inquiry under section 2244(b)(4)." *Goldblum v. Klem*, 510 F.3d 204, 219–20 (3d Cir. 2007).

This statutory scheme guides our analysis of Hill's motion for authorization. Hill claims constitutional error because his conviction was "based on evidence of questionable reliability." Pet'r Br. at 81 (quoting *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012)). "In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991). We have held that a defendant may challenge the fairness of their trial on due-process grounds based on a state court's evidentiary ruling. *See Fleming v. Metrish*, 556 F.3d 520, 535 (6th Cir. 2009). Thus, Hill's second or successive habeas application turns on whether the inclusion of the bitemark evidence rendered his trial so fundamentally unfair as to raise a due-process violation.

At this stage of proceedings, we do not resolve the merits of this claim. Our focus is limited to whether Hill has made a prima facie showing under § 2244(b).

**B. Section 2244(b)(2)(B)(i) Analysis**

We determine that Hill has made a prima facie showing that he was diligent in discovering the factual predicate for his due-process claim based on the apparently false evidence that the mark on Fife's penis was a human bitemark. The parties dispute only how we must define "factual predicate." If the factual predicate to Hill's due-process claim is the introduction of the bitemark evidence at trial in 1986, as the Warden insists, then there is no dispute that Hill was not diligent in discovering the evidence in support of his claim, even at the prima facie level. If, however, the factual predicate to his due-process claim is the changing forensic-odontology standards, as Hill insists, then there is no dispute that Hill exercised due diligence, making a prima facie showing.

We determine that Hill has made a prima facie showing that the factual predicate for his due-process claim includes the changing forensic standards. The new scientific standards alter our understanding of the very facts introduced at trial. Forensic odontologists now agree that the mark on Fife's penis was not a human bitemark. This is a new fact discovered by exercising due diligence. In 1986, the expert consensus was that there was a human bitemark on Fife and that either Combs or Hill made it. Today, the expert consensus is that there was no human bitemark on Fife. This is the factual predicate to Hill's claim.

Congress did not define "factual predicate" under AEDPA, and our court has yet to define "factual predicate" in the context of a motion under § 2244(b)(2)(B). We have, however, defined the term elsewhere under AEDPA. "[C]ourts generally agree that 'a factual predicate consists only of the vital facts underlying the claim.'" *Ayers v. Ohio Dep't of Rehab. & Corr.*, 113 F.4th 665,

670 (6th Cir. 2024) (quoting *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012)). "A fact is 'vital' if it is required for the habeas petition to overcome sua sponte dismissal." *Id.* (quoting *Rivas*, 687 F.3d at 535).

The vital fact of Hill's due-process claim is that there was no human bitemark on Fife. As Hill argues, it was only after the forensic standards changed that Hill discovered that "the bite-mark evidence submitted at his trial was both false and fundamentally unreliable as a matter of science." Reply at 5. Because neither party disputes that this fact could not be discovered until after ABFO guideline changes which did not take place until 2013, Hill was diligent in discovering this fact and he has made a prima facie showing under § 2244(b)(2)(B)(i).

The Warden resists this conclusion, relying on the most recent en banc decision in this case for his position that the factual predicate of Hill's claim must have occurred during trial in 1986. Resp. Br. at 28–31. The en banc court expressed its concern that changes in scientific standards may not alter the date on which the claim of error became ripe. *In re Hill*, 81 F.4th at 572. In doing so, as the Warden notes, the en banc court concluded that "the factual predicates for the claim occurred at trial." *Id.* The Warden argues that it directly follows that the "factual predicate" for the purpose of the § 2244(b)(2)(B) gatekeeping requirement also occurred at trial. That is incorrect.

For the purpose of a ripeness inquiry, the question is whether the events giving rise to the claim—that is, the act Hill complains of—had already occurred. *Id.* at 570. For the purpose of the § 2244(b)(2)(B) inquiry, however, the "factual predicate" is discovered not merely when the harm is done, but when the facts that make the harm clear are discovered. *In re Wogenstahl*, 902 F.3d 621, 628 (6th Cir. 2018). For example, in *Wogenstahl*, we rejected the petitioner's argument that

his *Brady* claim was unripe when he filed his first habeas petition, holding that the harm was done when the alleged *Brady* violation occurred before trial. *Id.* at 627–28. At the same time, we acknowledged that, for the purposes of § 2244(b)(2)(B), his claim "relies on facts that he only recently discovered"—that is, we acknowledged that the new facts were vital to his claim. *Id.* at 628. As in this case, one of the late discovered factual predicates in *Wogenstahl* was a letter from the Department of Justice, issued after trial, repudiating findings made by the government's experts at trial. *Id.* at 629. The en banc court here ruled on the ripeness issue but, ultimately, left the decision on the factual predicate for the panel to resolve. *See In re Hill*, 81 F.4th at 572.

The en banc court also pointed to three cases—two from the Eighth Circuit and one from the Tenth Circuit—which suggest that changes to scientific standards do not always meet the gatekeeping provisions of § 2244(b)(2). *Id.* (citing *Rhodes v. Smith*, 950 F.3d 1032, 1036 (8th Cir. 2020); *Feather v. United States*, 18 F.4th 982, 985 (8th Cir. 2021); *Case*, 731 F.3d at 1038). As an initial matter, none of these decisions addressed the definition of factual predicate under § 2244(b)(2)(B)(i), and furthermore none of these cases involved initial authorization orders applying the lenient prima facie standard. *See Rhodes*, 950 F.3d at 1036 (addressing only § 2244(b)(2)(B)(ii) following the district court's adjudication on the merits); *Case*, 731 F.3d at 1031 (same)[5]; *Feather*, 18 F.4th at 986 (addressing *Rhodes* in the context of an appeal of a *first/initial* § 2255 petition).

In any event, these rationales do not apply with equal force in this context. Those cases primarily considered whether an applicant could bring a due-process claim based on flawed

---

[5]A panel of the Tenth Circuit granted authorization on July 1, 2008, in a twelve-page order, holding that the movant made a prima facie showing under § 2244(b)(2)(B)(ii). *In re Case*, No. 08-2129 (10th Cir. July 1, 2008) (order).

scientific evidence. This is not our focus at the authorization stage. At this stage, Congress has directed us to authorize an "application only if [we] determine[] that the application makes a prima facie showing that the application satisfies the requirements of this subsection," i.e., subsection (b). 28 U.S.C. § 2244(b)(3)(C). This means that our analysis must focus on the requisite prima-facie-showing requirements for § 2244(b)(2)(B)(i), and not the potential merits of any eventually authorized habeas application.

*Rhodes* is illustrative.[6] In *Rhodes*, the applicant sought habeas relief because he was convicted based on flawed scientific evidence. The Eighth Circuit granted the movant authorization to file a second or successive application in the district court based, in part, on "two peer-reviewed articles published in 2009 and 2011" that demonstrated that the expert opinion introduced at trial that a victim's "neck hemorrhages were caused by some external force before drowning was false." *See Rhodes*, 950 F.3d at 1036; *see also Rhodes*, No. 16-3967 (8th Cir. July 6, 2017) (judgment). Following authorization, a magistrate judge found that Rhodes had demonstrated due diligence under § 2244(b)(2)(B)(i) as to the scientific reports published in 2009 and 2011, but that he had failed to introduce clear and convincing evidence of his innocence under § 2244(b)(2)(B)(ii). *Rhodes v. Smith*, No. CV 17-4025 (JNE/BRT), 2018 WL 5557053, at *12, *16–17 (D. Minn. July 6, 2018), *report and recommendation adopted*, No. CV 17-4025 (JNE/BRT), 2018 WL 5555123 (D. Minn. Oct. 29, 2018). The Eighth Circuit later affirmed that Rhodes did not provide clear and convincing evidence of his innocence under § 2244(b)(2)(B)(ii).

---

[6]The Eighth Circuit in *Rhodes* granted "permission to file []his third federal habeas petition." 950 F.3d at 1036. In other words, a prior panel of the Eighth Circuit granted Rhodes permission to pass through the first of the "two procedural 'gates' found in § 2244" as we have described above. *Id.* at 1035–36. The Eighth Circuit granted authorization in a single line: "The petition for authorization to file a successive habeas application in the district court is granted." *Rhodes v. Smith*, No. 16-3967 (8th Cir. July 6, 2017) (judgment).

*Rhodes*, 950 F.3d at 1036–37. The initial authorization in Rhodes's case supports the concept that authorization of the second or successive habeas petition is similarly appropriate in this case, and the final holding on the merits does not help us resolve whether Hill has made his lenient prima facie showing under § 2244(b)(2)(B)(i).

Accordingly, we determine that Hill has made a prima facie showing under § 2244(b)(2)(B)(i). Changing forensic standards resulted in the revelation of a vital fact that could not have been discovered until after 2013—specifically that the mark on Fife's penis was not a human bitemark. This newly discovered vital evidence is the factual predicate for Hill's due-process claim. Thus, Hill has made a prima facie showing that "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence." *Id.* § 2244(b)(2)(B)(i), (b)(3)(C).

## C. Section 2244(b)(2)(B)(ii) Analysis

We also determine that Hill has made a prima facie showing under § 2244(b)(2)(B)(ii).

Here, "we do not need to find that given the alleged constitutional violation no reasonable factfinder would have found [Hill] guilty of the underlying offense; instead, we simply must determine whether there are 'sufficient allegations' together with 'some documentation' so as to require a district court to engage in additional analysis in order to ascertain whether but for the constitutional error, no reasonable factfinder would have found [Hill] guilty of the underlying offense." *In re McDonald*, 514 F.3d at 546–47.

Hill has sufficiently demonstrated that additional analysis is necessary to determine whether, but for the due-process violation stemming from the bitemark evidence, no reasonable factfinder would have found him guilty.

- 13 -

**1. Prima Facie Due-Process Claim**

*In re McDonald* directs us to consider first whether Hill has alleged sufficient facts and submitted some documentation in support of his due-process claim, before then considering whether Hill has made a prima facie showing that but for that constitutional violation no reasonable factfinder would have found him guilty. *See* 514 F.3d at 545. We determine that Hill has submitted sufficient allegations and documentation to "make[] a prima facie showing that," 28 U.S.C. § 2244(b)(3)(C), admission of the bitemark evidence at his trial constituted a "constitutional error," *id.* § 2244(b)(2)(B)(ii).

"When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). "Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon 'whether the evidence is material in the sense of a crucial, critical highly significant factor.'" *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000) (quoting *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989)). We have held that a habeas applicant can state a due-process claim based on "bite-mark testimony, which [an applicant] claims was both substantively and probabilistically unsound." *Ege v. Yukins*, 485 F.3d 364, 374–78 (6th Cir. 2007). Hill has made a prima facie showing that the trial court erroneously admitted bitemark evidence that "was both substantively and probabilistically unsound." *Id.* at 374.

As the Ohio trial court that considered Hill's motion for a new trial recognized, between 2013 and 2016, "forensic odontologists, including the Diplomates of ABFO, have almost universally recognized that any expert opinion on bite evidence that purports to identify a specific biter from the open population is without any scientific basis." D. 1 (Order on Pet'r's Motion for

Evid. Hearing at 24) (Page ID #327). That court concluded that "[t]here is no question that the advancements in forensic odontology impeach and contradict the trial testimony of the experts." *Id.* at 25 (Page ID #328).

Hill has attached affidavits to his motion which support granting his motion for authorization. The affidavits and opinions of the modern experts contradict the trial testimony of the trial experts in two important ways. First, the documents demonstrate that changes to scientific standards might make it impossible to conclude that the mark on Fife's penis was made by a human bite. Dr. Franklin D. Wright, yet another former president of ABFO, opines "[i]t is not possible to determine from the evidence reviewed by Drs. Mertz and Levine that patterned injury on Raymond Fife's penis was created by a [sic] human teeth." D. 1 (Wright Aff. ¶¶ 2, 14) (Page ID #366, 368). Dr. Wright goes so far as to conclude "to a reasonable degree of medical/dental certainty, that the patterned injury on the victim, Raymond Fife, is not a human bitemark." *Id.* ¶ 11 (Page ID #368).

Dr. Alastair Pretty, a dental surgeon and member of the American Society of Forensic Odontology, reaches a similar conclusion applying the modern ABFO guidelines: "[T]here is insufficient evidence to reach a conclusion at any level of certainty regarding the causation of the small, circular wounds to the glans penis of Raymond Fife." D. 1 (Pretty Aff. at 1 & ¶ 3.6) (Page ID #372, 375). When Hill sought a new trial before the Ohio trial court, he also submitted a letter of attestation by three certified forensic dentists, all of whom concluded that Fife's injury was "not a human bitemark." D. 89-11[7] (Letter of Attestation at 2–5). The Warden does not dispute that

_____

[7]We take judicial notice of this letter of attestation that Hill filed in state court as part of his motion seeking to reopen his state-court *Atkins* case. *See United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012); *see also State v. Hill*, 231 N.E.3d 632 (Ohio Ct. App. 2023).

modern forensic scientists have unanimously concluded that it is impossible to conclude that the mark on Fife's penis was made by a human being. *See* Resp. Br. at 44–46.

Accordingly, we determine that Hill has submitted sufficient allegations and some documents that make a prima facie showing of a due-process claim. "[I]n other words, 'the facts underlying [Hill's] claim, if proven' would constitute a constitutional violation." *In re McDonald*, 514 F.3d at 546 (quoting 28 U.S.C. § 2244(b)(2)(B)(ii)).

**2. Whether No Reasonable Factfinder Would Have Found Hill Guilty**

Finally, we determine whether Hill has made a prima facie showing that but for the bitemark evidence no reasonable factfinder would have found him guilty. "[W]e simply must determine whether there are 'sufficient allegations' together with 'some documentation' so as to require a district court to engage in additional analysis in order to ascertain whether but for the constitutional error, no reasonable factfinder would have found [Hill] guilty of the underlying offense[s]." *In re McDonald*, 514 F.3d at 547.

Hill argues that he has made a prima facie showing because the state argued that the bitemark evidence was "especially significant." R. 27 (Trial Tr. at 243) (Page ID #2665); *see also* Pet'r Br. at 77. But, as the Warden points out, the state also relied on Hill's voluntary statements to police in arguing for Hill's guilt. *See* Resp. Br. at 37–39 (relying significantly on Hill's statements to police as the key non-bitemark evidence). For all the reasons we have already discussed, however, we believe Hill has made a prima facie showing that the bitemark evidence was prejudicial and played an important role in supporting his guilty determination. Both trial experts concluded that Hill bit Fife, providing conclusive evidence that Hill participated in both raping and kidnapping Fife. Whether any reasonable juror would find Hill guilty absent this

evidence requires closer examination of the trial record and weighing of the evidence, which is appropriately the job of the district court as part of the gate two analysis.

Accordingly, Hill has provided sufficient allegations and documentation to authorize the district court to consider more closely whether "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [Hill] guilty of the underlying offense[s]." 28 U.S.C. § 2244(b)(2)(B)(ii); *see also In re Wogenstahl*, 902 F.3d at 628–30 (granting motion for authorization where the movant had made a prima facie showing of a constitutional violation and had "cast considerable doubt" on the other trial evidence).

### III.  CONCLUSION

For the reasons set forth above, we **GRANT** Hill's motion for authorization to file a second or successive habeas corpus application.